28192.   NICHOLS *v.* G. L. HIGHT MOTOR COMPANY.

DECIDED JULY 13, 1940.   REHEARING DENIED JULY 30, 1940.

*Maddox & Griffin,* for plaintiff.

*Matthews, Owens & Maddox,* for defendant.

STEPHENS, P. J. (After stating the foregoing facts.) It is contended that Johnson, an automobile salesman of G. L. Hight Motor Company, who was driving an automobile furnished to him by his employer at the time his alleged negligence caused the death of the plaintiff's son, was, under the doctrine of respondeat superior, a servant of the motor company. Therefore it is contended that Johnson's employer is responsible for such negligence, in that John-

son at the time was in the performance of his duties as an employee of the motor company. It appears from the evidence that Johnson was employed as an automobile salesman by the motor company, and that company furnished him with an automobile for the purpose of performing his duties. The defendants contend, that Johnson was employed solely on a commission basis, and was not under the direction and control of the motor company in the performance of the duties of his employment, which constituted him, as a matter of law, an independent contractor, and not a servant; and that, even if Johnson was a servant and not an independent contractor in the operation of the automobile, the evidence was insufficient to show that he was engaged in the performance of his duties as a salesman of the motor company within the scope of his employment at the time of the alleged accident.

In order to hold an employer liable for injuries inflicted by an automobile while being operated by a salesman, the relation of master and servant must exist, and the servant must at the time have been acting within the scope of his employment in performing an act for the master's benefit. See annotations in 17 A. L. R. 621; 29 A. L. R. 470; 54 A. L. R. 627; 107 A. L. R. 419. It is necessary to determine whether the relationship between the motor company and Johnson was that of master and servant, or that of employer and independent contractor. It is true that the mode of payment for the services performed is an element to be considered in determining whether in a particular case the employee is an independent contractor or a servant, but it is by no means controlling of that question. The fact that a salesman's services are compensated for on a commission basis is not a decisive test by which to determine whether he is an independent contractor or a servant. See 61 A. L. R. 223. In Aisenberg v. C. F. Adams Co., 95 Conn. 419 (111 Atl. 591), it was said that where, under the contract of employment, the employer retains the right to control the manner, means, and method by which the employee performs the services, it is immaterial as to how payment for such services is made, whether in wages, salary, or commission, or by the piece or job. In Borah v. Zoellner Motor Co., (Mo. App.), 257 S. W. 145, the court, in holding that an automobile salesman was a servant for whose negligence in the performance of his work the employer was liable, said: "In the sale of automobiles he was clearly the agent of the de-

fendant, and the manner in which he was paid for his services, to wit, by a commission on the amount of sales, could not alter his relation to the defendant." See also Dare *v.* Boss, 111 Ore. 190 (224 Pac. 646). In Hoffman *v.* Liberty Motors, 234 Mass. 437 (125 N. E. 845), where one in "a general way" was employed by the defendant as a salesman and demonstrator of cars, being paid a commission for sales made by him, the court, after finding that the salesman did not act independently, but only in obedience to the orders of the general sales manager of the defendant, approved this statement: "The terms and mode of payment . . are not the decisive test;" the test being whether the employer retained authority to direct and control the work. In Long Ben *v.* Eastern Motor Co., 94 N. J. L. 34 (109 Atl. 286), in which it was held that it was open to the trial judge, sitting without a jury, to find that one authorized to demonstrate and sell an automobile for the defendant automobile company on a commission basis was a servant, the court said: "The driver was acting with the authority of the defendant and for its interest and benefit, and the fact that his compensation was by way of commissions on the sale, rather than by the day or week, is immaterial."

So, in determining whether one in performing certain services for another does so as an independent contractor or as a servant, the real test is whether the person alleged to be the master, under his arrangement with the other party, has or has not any authoritative control of the latter with respect to the manner in which the details of the work are to be performed; and therefore this test or element must, in the last analysis, always determine what was the essential nature of the relationship between the person who performed the given work and the person for whom it was performed. As some evidence of the nature of the relationship existing between the motor company and Johnson, we may refer to the fact that Johnson received no definite compensation; but more important than this consideration is the question, does the evidence show that Johnson was perfectly free to prosecute the work, for which he was engaged under his contract of employment with the company, in any manner he saw fit, using such means or methods as to his judgment might seem the most effective for accomplishing the sale of automobiles for the company? Ordinarily this is a question of fact to be determined from an examination of the facts in each

particular instance, including the contract of employment under which the employee is employed.

The evidence of the plaintiff showed these facts: Johnson, the driver of the automobile, the alleged negligent operation of which caused the death of the plaintiff's son, was at the time employed as a salesman of the motor company, an automobile sales agency. The automobile which was being driven by its salesman at the time of the accident belonged to the company. Johnson was employed by the company under an oral agreement to sell automobiles, and the company permitted him to have automobiles belonging to it, not only for demonstration purposes, but for "any other purpose in connection with" the sales work. He was paid a commission on the automobiles sold by him. In the sale of an automobile, whenever it became necessary to accept an automobile from the buyer as a "trade-in," the salesman was not permitted to pass on the matter, but this was done by the sales manager. No trade was closed until passed on by the manager, and all of the sales were concluded by him. Johnson was required to be at work at 8 a. m., although he had no required time to stop work for the day, and had no set hours to call on prospects. If Johnson wished to take time off from his employment, such as a week or several days, he was required to obtain the consent of his employer. He was required to attend sales meetings, and to keep a list of his prospects; and a copy of this list was retained by the company at the office. Johnson could work his prospects as he pleased, except that he was required to work the list over every thirty days, or they would become prospects to be sold by any salesman of the company. He was required to call on all of his list during that time, and to make regular reports thereof. The sales manager would give Johnson instructions and directions to call on certain people and endeavor to sell automobiles to them. He followed these instructions as best he could. He was required to, and did, to the best of his knowledge, at all times follow the instructions and directions given to him by the sales manager. The sales manager hired Johnson. Johnson did not pay a state, county, or city license as a salesman. Each week the company furnished a limited amount of gasoline to him for use in his work, but there was no limit on the amount of oil furnished to him by the company. Johnson had been so employed by the motor company for five years. The company deducted the

one per cent. from compensation paid Johnson, as required under the Federal social-security act, and Johnson had a social-security card and serial number.

Do these facts show that the company actually exercised no authoritative control over the sales of automobiles for it by Johnson, and that he was perfectly free, under his employment by the company, to choose his own time, place, and manner of seeking and procuring customers and selling to them automobiles of the motor company? In Curran v. Anthony, 77 Cal. App. 462 (247 Pac. 236), where, although a salesman's compensation was limited to a percentage of the price of cars sold by him, it appeared that it was his duty, in addition to that of soliciting business, to demonstrate cars to prospective buyers, and that although allowed a wide discretion as to his movements and time while so engaged, unless otherwise specially permitted, the use of cars for such demonstration purposes was limited to fixed hours each day, and that on the day of the accident occasioned by the salesman's negligence in demonstrating a car he was engaged in the business of appraising used cars and trade-ins, the court held that the evidence reasonably imported the inference that the salesman was, during working hours, as to his duties and the mode of their performance, subject to the direction and control of the employer, and was thus a servant, and not an independent contractor. In Frostom v. Grossman, 161 Minn. 440 (201 N. W. 929), the court held that the jury were justified in finding that an automobile salesman was an agent or servant of the defendant, for whom he sold cars on a commission basis, upon evidence that he was employed to sell new and old cars; that he might make sales in or out of the defendant's place of business; that he sought customers wherever he chose to go, without special directions from the defendant; that he made the defendant's place of business his headquarters; that if a "prospect" asked for a demonstration of a particular car, the salesman was permitted to give it to him; and that when the salesman took a car out for a demonstration he was not directed to follow any particular route, his general instructions being to come back as soon as possible and to use the car as little as possible. In Borah v. Zoellner Motor Co., supra, the court said that an automobile salesman, though compensated solely by the payment of a commission on his sales, where employed under a contract of employment under which the em-

ployer retained and had the right to control such salesman in the manner in which he performed his work, was deemed an agent or servant for whose negligence his employer was responsible, in the operation of an automobile furnished him by the employer for interviewing prospects, inasmuch as he was not an individual dealer nor a dealer at all, as he did not buy or resell or have the power of fixing prices, or of dictating terms, or of extending credit, or of becoming personally responsible to his employer for the payment of any bills; his only power beginning and ending with the one thing of making sales of machines belonging to his employer.

In Fearn v. Ralph Hamlin, 215 Cal. 211 (8 Pac. 2d, 1015), the court held that the evidence established as a matter of law all of the elements necessary to charge the defendant company with liability for the negligence of the driver of its car at the time the plaintiff's son was injured, under the doctrine of respondeat superior, where it appeared that the company was a distributor of automobiles, that the driver of the car was a commission salesman for the company, who received no salary, had no regular hours, and did not confine his efforts solely to the sale of cars, but, when he found a prospective buyer, was permitted to take one of the company's cars for demonstration purposes, and was required to return the car immediately after the completion of a demonstration; and that on the day of the accident he had found a prospective buyer, secured permission of the company's sales manager to demonstrate a car, and was on his way to the home of the prospect when an accident occurred, resulting in the injury to the plaintiff's son. The court stated that the company retained the right to direct and control the driver's use of its cars, and say for what purpose and under what conditions they should be driven, and to terminate his services and retake possession of any car at once, should disobedience to instructions or misconduct on his part induce such a course, and that these facts brought the case well within the rules determining the existence of the relationship of master and servant. In Ryan v. Farrell, 208 Cal. 200 (280 Pac. 945), an action to recover against an employer for an injury sustained from negligent operation of the employer's car by a salesman, it was held that the jury might conclude that the employer possessed the right to exercise that degree and kind of control over the salesman which distinguishes an employer from one for whom another person is rendering services

as an independent contractor, where there was evidence that the defendant maintained an automobile sales agency and employed as a salesman on a commission basis the person who was driving the car when the accident occurred; that such person was employed for no definite length of time; that the defendant had the right to discharge him; and that he was required to report at the defendant's office each morning for a sales meeting. The accident involved in that case occurred when the salesman was returning to his residence from the place where he had gone for the purpose of interviewing a prospective purchaser of an automobile. In Jones v. Shehee Ford Wagon &c. Co. (La. App.), 157 So. 309, the court held that where the evidence showed that the driver was employed by the defendant as a salesman and was driving the employer's automobile, using gasoline and oil furnished by the employer, and that the employer had the right under the contract of employment to direct the salesman's actions, although it did not exercise that right to any great extent, the jury was authorized to find that such driver was a servant, and not an independent contractor. The court stated that the test was, not that the defendant did not exercise the right of control or direction, but that it had the right to do so under the contract of employment.

In *Mitchem* v. *Shearman Concrete Pipe Co.*, 45 *Ga. App.* 809 (165 S. E. 889), applying the principles underlying the foregoing decisions, in a case where it appears a person was employed to travel over a territory designated by the employer at a fixed salary per month, with traveling and hotel expenses paid by the employer, to solicit orders from prospective purchasers selected and ascertained by the salesman at prices and on terms fixed by the employer, and made periodic reports to the employer of the business done, although such person might select and furnish his own means of travel and his own customers, and was "turned loose to get business," it not appearing that the employer had relinquished its right to supervise and control the manner, method, and means of the performance of the work, this court held that such person was a servant and not an independent contractor, and laid down this doctrine: "Where one is employed generally to perform certain services for another, and there is no specific contract to do a certain piece of work according to specifications for a stipulated sum, it is inferable that the employer has retained the right to control the manner, method,

and means of the performance of the contract, and that the employee is not an independent contractor." The decision in *Whitehall Chevrolet Co.* v. *Anderson*, 53 *Ga. App.* 406 (186 S. E. 135), relied on by the defendants, is not in conflict with the above view. In that case the salesman was driving a prospect home after having demonstrated a car to her. He was employed on a commission basis; he operated "his own automobile to assist him in carrying on his employment;" and his movements were "*in no way controlled by his employer, the automobile company*" (italics ours), except that he was not permitted to solicit the sale of automobiles outside of the territory in which the company was allowed to sell automobiles. Under those facts this court held that such salesman was, "with respect to the operation of his car, an independent contractor; so that his employer is not answerable in damages for an injury caused by his negligent operation of the car." There the test was that the salesman was not controlled by his employer in the performance of his work. *Simril* v. *Davis*, 42 *Ga. App.* 277 (155 S. E. 790), cited in *Whitehall Chevrolet Co.* v. *Anderson*, supra, is likewise distinguishable. In that case the owner of the car parted with possession and entire control thereof. It did not appear, as in the case at bar, that the owner of the car was an automobile sales agency, that the person to whom the automobile was delivered was an automobile salesman regularly employed and working under the direction and control of an automobile dealer who owned the car and assigned it to him to perform his work, and that such person was a salesman about the business of his employer at the time he negligently operated the automobile and brought about the injuries sued for. It was held that where the owner of an automobile delivered it to another person for the purpose of sale by such person to any purchaser whom he might procure, and the entire control of the automobile was surrendered to such person, he was not the servant of the owner, but an independent contractor.

In the case at bar, the inference is reasonable that, subject to the freedom of action inherent in the nature of the work of the automobile salesman in general, it was understood that the right to direct the manner in which the sale of automobiles should be done was reserved by the defendant company. The company fixed the price of the automobiles, and the trade and the sale had to be approved and was concluded by its general sales manager. The

company had the right to direct the salesman to call upon any prospect. On the occasion of the death of the plaintiff's son, Johnson was acting under specific directions and instructions of the sales manager to call upon a particular prospect. Johnson was required to report to the company office and to attend all sales meetings. He could be discharged by the company for disobedience to instructions, and he had no definite term of employment. The company furnished the gasoline and oil to use in the automobile furnished to Johnson for the performance of his duties. These and other facts referred to clearly would have permitted the jury to find that Johnson, in his employment as a salesman of the motor company, was a servant and not an independent contractor, and that in the operation of the automobile of the motor company for use in calling on prospects in connection with the sale of automobiles he was a servant, subject to the control and direction of the company. Certainly, under the facts Johnson was not, as a matter of law, an independent contractor.

This brings us to consider the second phase of this case. Was Johnson acting within the scope of his employment at the time of the accident which resulted in the death of the plaintiff's son? From the testimony of Johnson it appeared that on the occasion of the accident he was using an automobile which had been furnished to him by the company for use in connection with the sale by him of automobiles for the company; that at the time he was going to call on a prospect to whom he was trying to sell a new automobile; that this prospect had previously been in contact with him with reference to purchasing an automobile, and had gone by the company office and informed the manager that he wished to see Johnson; that the manager so informed Johnson, and directed him to call on this prospect; that this was about 6 p. m.; that Johnson would be unable to see this prospect before 7:30 that evening; that Johnson went first by a café where his wife worked, and ate supper, and was on his way from that place to call on this prospect when the accident occurred; and that on the day of the accident this prospect had visited the office of the company and had told the manager to have Johnson "come up to see me at the store that night." The manager of the company testified, that this prospect came by the company office about five o'clock the evening of the accident, and stated that Johnson had been calling on him with the idea of selling

an automobile to him; that when Johnson later came to the office the witness directed him to call on this prospect; and that Johnson stated that "he would as soon as he got supper." There was evidence to the effect that the place where the accident occurred, at about 7 p. m., was along a route which Johnson would necessarily travel from the café, where he had eaten supper, to the place where the prospect was.

The evidence authorized a finding that at the time of the accident Johnson was engaged within the scope of his employment, and was about the performance of his duties as a salesman of automobiles for the motor company. In fact, there was evidence that at the time of the accident Johnson was complying with directions from the sales manager of the defendant automobile dealer, to call upon this prospect for the purpose of selling him an automobile.

The fact that the accident occurred at night, after the salesman had eaten his supper and after the close of the regular hours of business, does not relieve the company, under the facts of this case, from responsibility, if the salesman was negligent and his negligence proximately caused the death of the plaintiff's son. However, the defendants concede that the evidence for the plaintiff made a prima facie case, except as to the relationship between Johnson and the motor company, and except as to Johnson acting within the scope of his employment and performance of his duties as a salesman at the time of the accident. See *Mitchem* v. *Shearman Concrete Pipe Co.,* supra, and cit.; Dishman *v.* Whitney, 121 Wash. 157 (209 Pac. 12, 29 A. L. R. 460); Ford *v.* Reinoehl, 120 Pa. Super. Ct. 285 (182 Atl. 120). In Ryan *v.* Farrell, supra, it appeared that the automobile salesman was returning to his home from a place where he had been to visit a prospective customer; and the court held that the evidence showed that the salesman was acting within the course of his employment when the automobile he was driving was negligently operated by him and resulted in the plaintiff's injuries. See cases cited in 17 A. L. R. 621; 29 A. L. R. 470; 54 A. L. R. 630; 107 A. L. R. 432.

It necessarily follows, from what is said above, that a prima facie case was proved by the plaintiff. It was error to grant a nonsuit as to the motor company.

*Judgment reversed. Sutton, J., concurs. Felton, J., concurs specially.*