32313.   HALL *v.* CASSELL *et al.*

Decided March 4, 1949.   Rehearing denied March 30, 1949.

*W. Neal Baird, Neely, Marshall & Greene,* for plaintiff in error.
*Houston White, J. Walter LeCraw, John H. Hudson,* contra.

PARKER, J. This case and the case of *Garmon* v. *Cassell,* 78 *Ga. App.* 730, (52 S. E. 2d, 631), grew out of the same occurrence. Mrs. Cassell sued Jesse T. Garmon and Charles M. Hall, doing business as Hall Motors, to recover the value of the life of her husband, who was killed by an automobile owned by Hall and driven by Garmon, alleged to have been the agent of Hall and acting within the scope of his authority. The plaintiff recovered, and the defendants each separately filed a motion for new trial and bills of exceptions to the overruling of their motions. See *Garmon* v. *Cassell,* (supra), for a more complete statement of the case.

■ Under the general grounds of the motion, the defendant contends that the plaintiff failed to carry the burden of showing that the codefendant Garmon, at the time and place the plaintiff's husband was struck and killed, was driving the automobile as the agent of the defendant Hall and was acting within the scope of his authority. The evidence shows that Garmon was driving the car, that the car was owned by Hall, that Garmon was in the general employment of Hall in using and driving the car, and the presumption arose that Garmon was in the prosecution of Hall's business and acting within the scope of his employment. This principle as applied to cases of this character is well settled. See *Gallagher v. Gunn,* 16 *Ga. App.* 600 (85 S. E. 930); *Moore* v. *DeKalb Supply Co.,* 34 *Ga. App.* 375 (129 S. E. 899); *Perry* v. *Lott,* 38 *Ga. App.* 729 (145 S. E. 479); *Haygood* v. *Bell,* 42 *Ga. App.*

602 (157 S. E. 239) ; *Mitchem* v. *Shearman Concrete Pipe Co.*, 45 *Ga. App.* 809 (165 S. E. 889) ; *Dawson Motor Co.* v. *Petty*, 53 *Ga. App.* 746 (186 S. E. 877) ; *Atlanta Laundries Inc.* v. *Goldberg*, 71 *Ga. App.* 131 (30 S. E. 2d, 349) ; *Fielder* v. *Davison*, 139 *Ga.* 509 (77 S. E. 618). This presumption is rebuttable, but if it is to serve its purpose, "in order to overcome it as a matter of law, the evidence of the defendant should be clear, positive, and uncontradicted that the servant was not at the time in the prosecution of his master's business or acting within the scope of his employment." *Abelman* v. *Ormond*, 53 *Ga.* App. 753, 761 (187 S. E. 393).

The evidence of Hall with respect to the agency of Garmon was substantially as follows: Hall was engaged in the business of buying and selling automobiles, and Garmon was employed by him as an automobile salesman, and had been working with him for about seven or eight years. Garmon had a drawing account of $50 a week against commissions, and had never failed to make $50 during each week that he worked for Hall. Garmon had no regular working hours but usually came in about 9 o'clock a. m., and would leave anywhere from 6 to 10 o'clock at night. On each sale Hall would set the commissions and they would have a settlement every Saturday night. On December 6, 1947 (the date the plaintiff's husband was killed), Hall owned a Lincoln automobile which Garmon was driving. It had been advertised for sale by Hall in the Atlanta Journal, the advertisement having Garmon's telephone number at home in it, and Garmon wanted to take the car home for the purpose of selling it. Hall expressly directed Garmon to take this particular automobile with him that night for the purpose of selling it to anybody who called him on the 'phone and wanted to buy it. Garmon was to sell the car from his home and was to make the sale for Hall, who had put a price on it. Garmon left the lot around 7 o'clock in the evening with the car, and Hall told him at the time he could take it home and sell it if he could get any replies to the advertisement. The gasoline that was in the car was bought by Hall, and there was no particular route Garmon was to take in taking the car home, and if he wanted to use the car to go by a grocery store and pick up groceries while he was going home, it would have been satisfactory to Hall.

Garmon testified with respect to his employment by Hall substantially this: He was employed as a salesman to sell cars, and was appointed by Hall as sales manager, and he worked any time he could sell a car, day or night. He drew $50 a week, had been sales manager for approximately two or three years, and his duties as such were to sell cars just like a salesman, and appraise cars if Hall was not there. On that Saturday morning (December 6, 1947), they had advertised the Lincoln car. He left the lot at 9 p. m., asked Hall if he could stop and get his groceries, and, Hall said it was all right. It took about an hour to get his groceries, and then he started home. He did not go anywhere else on his way home except to the grocery store, which is on his street as he goes home. Hall told him to take the car, it was his direct orders; he didn't know that morning that he was going to take the car home that night until Hall told him. He had authorized Hall to use his telephone number in advertisements. Garmon testified also as follows: "I certainly was in line of duty on this Saturday night when my car hit Mr. Cassell; I did exactly what Mr. Hall ordered me to do. . . He said 'Jessie, I want you to drive this Lincoln car home and sell it; I have advertised it in your name with your 'phone number'; I did exactly what he told me; he said it would be O. K. for me to stop and get my groceries. . . If I had a prospect, it was customary for me to demonstrate cars on Sunday. . . We do not open our lots on Sundays. . . I took it to my home in the hope that I might be able to sell it on Sunday. . . If I had sold the car, he would have paid me for selling it."

As to the manner in which Garmon's compensation was paid by Hall, it appeared from the testimony of Hall's bookkeeper, and from ledger sheets and a number of checks introduced in evidence, that Garmon was paid regularly each week $49.50. Most of the checks were in that amount with the word "salary" thereon, and also a memorandum showing that a deduction of fifty cents was made for social security tax.

"The chief test to be applied, however, in determining whether the relationship of the parties under a contract for the performance of labor is that of employer and servant, or that of employer and independent contractor, lies in whether the contract gives, or

the employer assumes, the right to control the time, manner, and method of executing the work, as distinguished from the right merely to require certain definite results in conformity to the contract." *Liberty Lumber Co.* v. *Silas,* 49 *Ga. App.* 262 (175 S. E. 265), and cits. "Where one is employed generally to perform certain services for another, and there is no specific contract to do a certain piece of work according to specifications for a stipulated sum, it is inferable that the employer has retained the right to control the manner, method, and means of the performance of the contract, and that the employee is not an independent contractor." *Mitchem* v. *Shearman Concrete Pipe Co.,* supra, and cits. Under these rules of law and the evidence, the jury was authorized to find that Garmon was the employee and servant of Hall and not an independent contractor.

The defendant relies particularly on the rulings of this court in *Nichols* v. *G. L. Hight Motor Co.,* 65 *Ga. App.* 397 (15 S. E. 2d, 805), and *Stenger* v. *Mitchell,* 70 *Ga. App.* 563 (28 S. E. 2d, 885). When the *Nichols* case was before this court the first time, as reported in 63 *Ga. App.* 155 (10 S. E. 2d, 439), it appeared that Johnson, who was the salesman of G. L. Hight Motor Company, had gone by a cafe where he had eaten his supper, "and was on his way from that place to call on this prospect when the accident occurred," and it was held that "a jury would be authorized to find that the salesman was at the time the servant of the sales agency, and was acting within the scope of his employment as such." The granting of a nonsuit by the trial court on the first trial was reversed. On the second trial, it appeared that Johnson had not reached the cafe, but was en route to the cafe to eat supper at about 6:45 p. m. when the accident occurred, and that he had no intention of seeing his prospect until about 9 o'clock, and the court again granted a nonsuit. This court held under these facts that the servant was engaged in a purely personal enterprise at the time and place of the accident and that the trial court did not err in granting a nonsuit. The distinguishing differences between the *Nichols* case and the instant case are apparent. In the *Nichols* case the salesman was engaged at the time of the accident on a mission wholly personal, and was under no orders or instructions from his employer, whereas, in this case

Garmon testified that he was in line of duty when his car hit the plaintiff's husband, that he was doing exactly what the defendant Hall had ordered him to do, and that he was taking the car to his home under Hall's instructions so that it could be shown on Sunday to any prospect who might respond to the advertisement which had been placed in the newspaper by Hall. Garmon was getting a ride in the car to his home and was using the car to carry groceries to his home upon the express authority of Hall. But it can not be said that the taking of the car to his home by Garmon was solely a personal mission which was beneficial only to Garmon and in which Hall was not interested or concerned.

In the *Stenger* case it appears that Moore was employed by the defendants as a salesman prior to the time of the accident, on a commission basis, and was allowed the use of their automobiles as an accommodation and a courtesy, and that he was driving an automobile owned by the defendants, which struck and injured the plaintiff. It appeared further that Moore had completed his work with the defendants for that day and was on his way home when the accident occurred. In that case this court said: "In the present case, the evidence was uncontroverted that at the time of the accident, Moore was not on his way to call upon any prospective purchaser, nor on any mission for the defendants. He had fully completed all the services he was to perform for the defendants at their place of business. . . and he was on his way home when the accident occurred in which the plaintiff was alleged to have been injured." If Garmon had been on his way home in a car he had merely borrowed from Hall, or in a car owned by Hall that he was using as a mere privilege or courtesy, the ruling in the *Stenger* case might be in point; but as already stated, Garmon was doing more than merely going home when his car struck the plaintiff's husband. He was taking the car to his home upon express orders and directions of Hall, so that it would be available and could be shown or demonstrated on Sunday, when the car lot was closed, to any prospective purchaser who might inquire that day.

The defendant also cites *Roper* v. *American Mutual Liability Ins. Co.*, 69 *Ga. App.* 726 (26 S. E. 2d, 488), and *McIntyre* v. *J. M. Harrison & Co.*, 62 *Ga. App.* 241 (8 S. E. 2d, 580). The facts

of the *Roper* case are very similar to those in the *Stenger* case, in that the wreck occurred while Roper was driving his employer's car about his own personal business, going to his home, and was not on any business of his employer. In the McIntyre case the deceased was killed when the car in which he was riding, which belonged to his employer and was used as a demonstrator, was struck by a train at a public crossing. The deceased was either on his way home or to see another prospective purchaser at the time. This court held that, under the facts of that case, the deceased was either an independent contractor or had possession of the car merely for the purpose of going to and from work, and the death was not compensable. The *Roper* case and the *McIntyre* case were claims for compensation under the Workmen's Compensation Law, and in each of those cases the burden of showing that the deceased was killed as the result of an accident arising out of and in the course of his employment was on the claimant.

■ Special ground 7 alleges error in the refusal of the court to charge a written request of the defendant. It appears that the court charged the exact words of the request, which was in three paragraphs, with an additional phrase added in each of two of the paragraphs requested. The charge given was substantially the charge requested. The additional phrases added by the court were proper under the evidence and issues in the case, and they made the charge more accurate and adjusted it to the evidence and issues involved.

■ Ground 8 complains of the refusal to give in charge a written request, as follows: "I charge you, gentlemen of the jury, that where one person employs another to sell his automobile on a commission basis and the entire control of the automobile is surrendered to such person the owner of the car is not liable for the negligence of the salesman while he is taking the automobile to a place where he is to keep it until he has an opportunity to sell it.

"As applied to this case, I charge you that, if Jesse T. Garmon was employed by Charles M. Hall to sell the automobile referred to in plaintiff's petition on a commission basis, and Hall surrendered the entire control of the car to Garmon, that Hall would not be liable for the acts of Garmon while Garmon was driving

the automobile to his, Garmon's, home for the purpose of selling the same on the following day, and if you believe that such are the facts of this case, then it would be your duty to return a verdict for the defendant Hall irrespective of any liability as between the plaintiff and the defendant Garmon."

The contention of the defendant is that said request was peculiarly appropriate to the facts of the case, and was legal and adjusted to a distinct matter at issue, and should have been charged, although the court may have covered the principal in more general and abstract terms. In the first place, we think that the charge given as a whole covered fully the contentions of the defendant to the effect that Garmon was not the agent or servant of the defendant Hall at the time and place the plaintiff's husband was struck and killed, and that Garmon was an independent contractor. Furthermore, the charge requested was somewhat argumentative and was not wholly adjusted to the pleadings, the law, and the evidence in the case. While it may have been adjusted to certain phases of the evidence favorable to the defendant, it would have eliminated from the consideration of the jury inferences authorized from some phases of the evidence favorable to the plaintiff. For these reasons we think that the request to charge was properly refused. *Sims* v. *Martin*, 33 *Ga. App.* 486 (5) (126 S. E. 872); *New York Life Ins. Co.* v. *Thompson*, 50 *Ga. App.* 413 (178 S. E. 389); *Lefkoff* v. *Sicro*, 189 *Ga.* 554 (6 S. E. 2d, 687, 133 A. L. R. 738).

■ The first six special grounds of the amended motion for new trial in this case are the same as the corresponding numbers in the *Garmon* case, and our rulings on those grounds in that case are applicable and controlling here.

The court did not err in overruling the motion for new trial.

*Judgment affirmed. Sutton, C. J., and Felton, J., concur.*