34131, 34167. FAMBRO *v.* SPARKS *et al.;* and *vice versa.*

DECIDED SEPTEMBER 13, 1952.

*Culpepper & Culpepper, Harris, Russell, Weaver & Watkins, John D. Comer,* for plaintiff in error.

*Jones, Sparks, Benton & Cork, Clarence H. Clay Jr.,* contra.

FELTON, J.  ■ The defendant in error in the main bill moves to dismiss the writ of error on the ground that the action against the defendant partners, Sparks Motor Company, and the defendant Jelks was a joint cause of action and contends that, where more persons than one are sued as defendants on a joint cause of action, a direct bill of exceptions to this court will not lie to a ruling dismissing the action as to some of the defendants, but that the plaintiff must proceed against the remaining defendants to a final judgment before he is entitled to bring the antecedent ruling to this court for a review. While we agree that the contention states a correct principle of law as to *joint* causes of action (*Johnson* v. *Motor Contract Co.,* 186 *Ga.* 466, 198 S. E. 59), we do not agree that the instant action is a joint cause of action such as would make this principle of law applicable here. The action was not joint as to the first count because it was based on a simple respondeat superior principle wherein the servant is not a necessary party to an action against the master, and vice versa as to an action against the servant alone. *Edwards* v. *Gulf Oil Corp.,* 69 *Ga. App.* 140 (24 S. E. 2d, 843)

and citations. The action was not joint as to the second count because it was based on the alleged negligence of the defendant partners, Sparks Motor Company, in selecting and retaining in their employ a person known to them to be an incompetent driver. In an action on this theory the defendant Jelks was not a necessary party. The motion to dismiss the main writ of error is without merit, and is denied.

■ The plaintiff in error in the main bill assigns error on the refusal by the court to admit certain testimony of the defendant Jelks. The plaintiff in error offered to prove that a friend told Jelks that he needed an insurance policy and that Jelks went to Willis B. Sparks Jr., a member of the defendant partnership, and asked him about it and that Sparks told him that he (Jelks) was covered by his (Sparks') policy and that Sparks knew that his insurance policy did not cover anyone unless he was on the business of Sparks Motor Company. The plaintiff in error proposed to prove the above facts by Jelks and Sparks when they were on the stand for the purpose of cross-examination. The court did not err in refusing to admit the testimony because it did not appear and the plaintiff in error did not propose to show that Jelks knew what the Sparks insurance policy provided so as to authorize an inference that the parties impliedly agreed that Jelks was to be considered on his employer's business at all times when he was operating one of the employer's automobiles. Sparks Motor Company could not be held liable in this case under the doctrine of estoppel, as the principle could only operate as between Jelks and his employer, if in fact it could operate at all, a point we do not decide.

■ The plaintiff contended, under count one of the petition, that, at the time of the collision between his automobile and the one driven by Jelks, Jelks was acting within the scope of his employment with Sparks Motor Company. The evidence failed to establish such a fact. The following statement from the plaintiff in error's brief sums up his argument as to count one: "We believe that the broad instructions given Jelks, that he could sell a car at any time, the encouragement given him to do so, the fact that by furnishing him with a company car Sparks made it possible for him to sell at all times and to make contacts at all times, and the fact that the previous nighttime

selling activities had been ratified, all showed a clear permission for Jelks to act as an agent of Sparks within the scope of his employment as a salesman *whenever and wherever he saw fit to try to sell a car.* The evidence was that Jelks sought to sell a car often and regularly while on what at first might seem to be a purely social venture. Under this broad mandate given him, he was an agent on the job *whenever he was trying to sell a car* for his own benefit and for that of his employer." (Emphasis supplied.) This contention is not inconsistent with our holding here, and we agree that, *whenever* Jelks attempted to or did sell a Sparks automobile at night or during his social hours, he was within the scope of his authority and employment. However, we think that the evidence here plainly does not show that on the occasion in question Jelks was trying to sell the car he was driving or any other car. Both Walter Graham and Fick Taylor testified that they remembered no sales conversation at all on the night of the collision. Jelks did testify that while at the Tropics he saw Roy Peterson and talked with him about cars, among other things, and that they discussed some buys, and that he, Jelks, mentioned, possibly, one or two cars that he knew of that he thought would be a good buy for Peterson. However, Peterson did not accompany Jelks and the others to the Green Lawn Supper Club nor was he a passenger in the automobile at the time of the collision. If, as contended by the plaintiff in error, Jelks did have some subtle notions of salesmanship lurking in his mind during the trip to and from the Green Lawn, they were not put into overt acts of salesmanship by Jelks, as the evidence shows that during such time no sales conversation took place. Some of the cases relied upon by the plaintiff in error are workmen's compensation cases concerning traveling salesmen and clearly are not applicable here. The cases of *Hall* v. *Cassell*, 79 *Ga. App.* 7 (52 S. E. 2d, 639), and *Dawson Motor Co.* v. *Petty*, 53 *Ga. App.* 746 (186 S. E. 877), are distinguishable from the instant case. In the *Hall* case the defendant's employee, Garmon, was taking one of the defendant's automobiles home with him so that he might demonstrate it to any prospective buyers. The automobile had been advertised for sale by the defendant Hall in the Atlanta Journal, the advertisement having Garmon's home telephone

number in it. On the way home with the automobile Garmon stopped at a grocery store. While proceeding from the grocery store to his home in the automobile, Garmon struck and killed the plaintiff's husband. It was there held that at the time he struck and killed the plaintiff's husband, Garmon was within the scope of his employment. Garmon was proceeding from the grocery store to his home for the purpose of specifically having the automobile available to show to prospective purchasers who answered the advertisement. We think that the following statement by the court in the *Hall* case shows the distinction between that case and the instant case: "If Garmon had been on his way home in a car he had merely borrowed from Hall, or in a car owned by Hall that he was using *as a mere privilege or courtesy,* the ruling in the *Stenger* case might be in point; but as already stated, Garmon was doing more than merely going home when his car struck the plaintiff's husband. He was taking the car to his home upon express orders and directions of Hall, so that it would be available and could be shown or demonstrated on Sunday, when the car lot was closed, to any prospective purchaser who might inquire that day." (Emphasis supplied.) In the instant case, Jelks, during the trip to and from the Green Lawn Supper Club, was using the automobile as a privilege or courtesy of Sparks Motor Company. In the *Petty* case the defendant's agent, "in connection with his employment . . was furnished a new-model Ford V-8 as a demonstration car, his duty being to demonstrate these cars to prospective customers." The court decided the case upon the premise that the facts gave rise to a presumption that at the time of the injuries the defendant's officer was on the business of the company, and that no evidence was introduced to rebut the presumption. In the instant case, we have all the facts surrounding the issue, in which event no presumption obtains.

■ The second count of the petition charged that the defendant partners were negligent in hiring and retaining in their employ an incompetent driver. The plaintiff sought to prove Jelks' alleged incompetency by showing that Jelks had had two automobile collisions prior to the collision in the instant case and while in the employ of the defendant partners and to their knowledge. Jelks was hired by Sparks

Motor Company in April of 1948. Between that time and November 17, 1949, the date of the collision in the instant case, Jelks was involved in two automobile collisions. The evidence as to the details of these two collisions was the testimony of Jelks himself. As to the first he testified: "I was coming around a bad curve and wasn't able to make it. I ran into a tree or post and, in turn, clipped down a couple of mail boxes. I wasn't familiar with the curve. My speed may have been around fifty-five to sixty miles per hour. I have never found out the exact speed limit, but I would think that there is now a thirty-five miles per hour zone. If you stop your car and look closely at the sign, it says that. There was a lot of sand in the road and I wasn't able to brake the car. The accident may have been caused by my excessive speed in going around the curve but not so much that as an unfamiliarity with the road. The curve is where the busses turn around, and it curved to my right. A tree was on the left-hand side of the road and I didn't realize that the curve was there until I had gotten on across to the left side of the road. Speed may have had some connection with the accident, but primarily it was unfamiliarity with the road. I had had no occasion to travel in that section of town, although I have lived in Macon all my life." As to the second, Jelks testified: "Turning to the accident on Vineville, it happened about 4 o'clock one afternoon when I was driving out to see a prospect. There was a bunch of cars stopped ahead; I stopped; and then as I started up I went on behind and the car ahead of me suddenly stopped again and I ran into the rear end of it. No damage was done to the other car, but my grill and lights were damaged." Whether the method of proving incompetency of a driver be by reputation or by specific acts (accidents, etc.), or by either one or by both, we do not think that incompetency was proved by either method in this case. No evidence at all was introduced as to Jelks' reputation as a driver. Assuming that the two accidents just above referred to were his fault, we do not think that two isolated instances of negligence of such divergent character could possibly authorize a conclusion that the party guilty thereof was incompetent ever to drive an automobile.

The court did not err in granting a nonsuit as to the defendants, Sparks Motor Company.

*Judgment affirmed on the main bill; the cross-bill of exceptions is dismissed. Sutton, C.J., and Worrill, J., concur.*