Ben SAWYER

v.

UNITED STATES of America.

Civ. A. No. 440.

United States District Court
M. D. Georgia, Albany Division.
Aug. 15, 1956.

A'Delbert Bowen, Cuthbert, Ga., for plaintiff.

Robert B. Thompson, Asst. U. S. Atty., Macon, Ga., for defendant.

BOOTLE, District Judge.

This suit is brought under the Federal Tort Claims Act, 28 U.S.C.A. §§ 1346(b) and 2671–2680.

The findings of fact will be stated in narrative form.

Late in the afternoon of May 25, 1954, the plaintiff was plowing his mule, Emma, in his cornfield, approximately twenty miles from Turner Air Force Base, Albany, Georgia, when, suddenly and from the rear of plaintiff and Emma, there came a jet propelled aircraft flying at the low altitude of one hundred to one hundred and fifty feet and making a loud noise. Emma, not being accustomed to such close association with jet planes, "ran away". So quick was her getaway, that the plow lines, looped around the plaintiff's wrists in the conventional manner, tightened and pulled the plaintiff prostrate, head-first through the plowed field. His eyes and mouth were filled with the soil and he never got to see the airplane. Emma dragged him against a stump and left him there. He sustained certain injuries to his back described as a lumbosacral-iliolumbar strain, which caused him to give up year-round farming and turn to the produce business.

While the plaintiff did not see the plane, some farmers in nearby fields did and one of them saw under its left wing the letters "USAF", and under its right wing a star, the prescribed markings for Air Force aircraft. While the testimony of this witness is criticized by the defendant on the grounds that it would be difficult for the witness to see and recognize these markings, and that earlier he had made a statement to the investigating officers that he had seen a United States star on the plane, but did not include in that statement a reference to the letters "USAF", the Court is sufficiently impressed with the testimony of this witness to feel inclined to adopt it as true and to feel inclined also to find that the aircraft was marked as the witness testified. Moreover, the Court would be inclined to infer from that testimony and from all facts herein found that this plane was owned by the United States, that its operator, or operators, were negligent in flying too low and too close to Emma, that Emma and the plaintiff were entirely without fault and that such negligence was the sole proximate cause of the plaintiff's injuries. But such findings and inferences would avail plaintiff nothing.

The likeness of this case to Curtis v. United States, D.C.N.D.N.Y., 117 F. Supp. 912, 913, is already apparent. Two crucial paragraphs of that decision read:

"Upon this meager record the plaintiff seeks a money judgment. The difficulty is immediately apparent. There is a total failure of proof as to the operation of the planes causing the damage by defendant's agents within the scope of their employment.

"Ownership of the instrumentality causing the damage is not, however, sufficient to subject the defendant to liability, even where negligence in its use or operation is found. The statute itself—28 U.S.C.A. § 1346(b)—provides that the negligent act must have been performed by an employee of the government while acting within the scope of his employment, in order to subject the defendant to liability. In substance, the plaintiff asks the Court to assume here that the planes were operated by an employee of the defendant and within the scope of his employment. It is plain that to so find would be to pile inference upon inference. The

Court is willing to infer by reason of the circumstances here that the planes were owned by the defendant, but it would violate the well-recognized rule of evidence if, from the inferred fact of ownership, it is further inferred, (a) that it was operated by an employee of the United States; and (b) that such employee was acting within the scope of his employment. The dividing line between logical inference and pure speculation is not easily drawn, but in the Court's opinion it would be pure speculation to find in the absence of a single bit of evidence that the planes in question were operated by United States military personnel upon a regular training mission, when it is just as probable that they may have been operated by National Guard personnel, not in federal service although using federal equipment. Under such circumstances the defendant would not be liable. McCranie v. United States, 5 Cir., 199 F.2d 581; see also Larkin v. United States, D.C.N.D.N.Y., 118 F.Supp. 435, and cases cited therein."

■ The plaintiff relies upon Air Force Regulation 60–1 to supply the indispensable proof that the plane was being operated by an employee of the Government while "acting within the scope of his office or employment", or by a member of the Armed Forces of the United States while "acting in line of duty". 28 U.S.C.A. § 2671. This Regulation cannot fill the void. At most, it, by its terms, "outlines the policies of the Air Force on the piloting and use of Air Force aircraft, and the piloting of other aircraft by personnel of the Air Force." The declaration of those policies, like the adoption of resolutions, does not preclude their violation.

■ Were this an action against a non-sovereign defendant, and were the evidence to show that the operator of the plane was in the general employment of the owner of the plane in using and operating it, a presumption would arise that the operator was in the prosecution of the owner's business and acting within the scope of his employment. Hall v. Cassell, 79 Ga.App. 7, 52 S.E.2d 639; Gallagher v. Gunn, 16 Ga.App. 600, 85 S.E. 930. As to whether or not such presumption could arise in this case, notwithstanding the rule requiring statutes waiving the immunity of the sovereign from suit to be strictly construed, see Hubsch v. United States, 5 Cir., 174 F.2d 7(4, 5, 6) and cases cited. We do not reach that question, however, inasmuch as we have no evidence showing that the operator of the plane was in the employment of the United States, or that he was a member of the military or naval forces and acting in line of duty. Johnson v. Webb-Crawford Co., Inc., 89 Ga.App. 524, 528, 80 S.E.2d 63; 28 U.S.C.A. § 2671.

■ While the trier of the facts may legally find "an inference on an inference", the overall theory becomes more and more tenuous as each added factual proposition follows only problematically from the one before it. Smith v. General Motors Corporation, 5 Cir., 227 F.2d 210(1). Every finding of fact must have some reasonable basis in the evidence and cannot rest wholly upon surmise and speculation. A verdict is without legal basis if the evidence does no more than furnish a springboard for conjecture and speculation. Montgomery-Ward & Co. v. Sewell, 5 Cir., 205 F.2d 463(9).

My sympathy for the plaintiff is such as to cause me to quote once more from Curtis v. United States, supra:

"The circumstances are such that the Court would like to reimburse the plaintiff for the damages caused, but generosity is not the function of the court in determining litigation. The law on occasion may be bent to do justice, provided care is taken to see to it that it is not broken. Problems under the Federal Tort Claims Act by Judge Yankwich, 9 F.R.D. 143, at page 169. To permit the plaintiff to recover

here would annul the provision of the statute which plainly limits liability to negligent acts of government employees acting within the scope of their authority. This amounts to eliminating by judicial decision the above provisions of the statute."

It appears in this case, as in the Curtis case, that the evidence which might supply the deficiency has not been purposely withheld. It was stipulated at the trial that the United States had made a diligent effort to determine the identity of the accused airplane.

The Court finds the facts to be as herein stated and concludes that, while it has jurisdiction of the cause of action, the plaintiff has failed to establish a claim upon which relief can be granted.

Counsel for the defendant will prepare a judgment in its favor and submit it to counsel for plaintiff, who will have five days within which to make suggestions, or objections, as to form.