Charles R. BROESCHE et al., Appellants,

v.

Maxine BULLOCK et vir, Appellees.

No. 90.

Court of Civil Appeals of Texas.

Houston (14th Dist.).

March 27, 1968.

Rehearing Denied April 24, 1968.

Preston Shirley, Mills, Shirley, Mc-Micken & Eckel, Galveston, for appellants.

Ralph K. Miller, Jim M. Perdue, Wm. Mac Gann, Miller, Gann & Perdue, Houston, Kenneth Bing, Bing & Willy, Freeport, for appellees.

BARRON, Justice.

This is an appeal by Charles Francis Broesche and his son, Charles Rodney Broesche, defendants in the trial court, from an adverse judgment rendered in favor of plaintiffs below, Maxine Bullock and husband, Walter Dan Bullock, in a negligence action for injuries and damages suffered by Mrs. Bullock. On special issues submitted to the jury, the trial court rendered judgment in favor of appellees for $44,500.00. From the judgment below, appellants, Charles F. Broesche and Charles R. Broesche, have properly perfected their appeal.

At approximately 1:30 o'clock in the afternoon of April 19, 1965, Mrs. Maxine Bullock, accompanied by her two teenage daughters and a friend, drove to or arrived at that portion of the beach of the Gulf of Mexico between Freeport and San Luis Pass in Brazoria County. It was a bright, sunny afternoon. Upon arriving at the beach, Mrs. Bullock parked the 1962 Chevrolet Impala automobile she was driving in a row of cars, each of which, including the Bullock vehicle, was parked headed toward and approximately 50 feet from the water. Mrs. Bullock then got out of the car with a "patch quilt," purse and beach towels, spread the quilt (approximately six feet square) with the patch side up and the blue liner side down, on the beach about five or six feet in front of her car. She placed her quilt in line with the other quilts on the beach. She was dressed in cut-off blue jeans and a striped blouse.

Mrs. Bullock's daughters requested and were granted permission by her to use the car to go and get some air mattress floats. The children then got into the car and left, backing the Bullock car out into the beach road behind the row of parked cars and left the scene. Mrs. Bullock then lay down on the quilt face down and, as she testified, proceeded to read a letter. While Mrs. Bullock apparently was in such a position, appellant, Charles Rodney Broesche, then twenty years of age and in his senior year of high school, operating a 1960 Chevrolet Impala and accompanied by three other young men, drove into the parking space previously occupied by the Bullock vehicle, after having been flagged down by a passing Highway Patrolman for "sand-surfing"—pulling an automobile tire attached to the rear of the car by means of a rope with a rider thereon. The Broesche car was also facing the Gulf when it was parked. After driving into the area, the Broesche boy stopped his car and got out and went to the back of the car to await the Highway Patrolman's arrival. He testified that he did not see anyone in front of his car. The patrolman came up and talked to the boys and told them to put the tire back into the trunk of the car which they did. Broesche then got back into his car and started to back out the way he came in, but the traffic was heavy behind and there was an open space several cars down on his left. Broesche decided to move forward and make a left turn to get back on

the road behind the cars. The appellee, Maxine Bullock, was lying on a blanket in front of the open area in which Broesche drove his car, and had been lying on the blanket for some time. Broesche testified that due to his looking backward when he drove into the slot, and due to the fact that Mrs. Bullock was so close to the front of his car that when he got back into the car he could not see her over the hood of his car. There was evidence that Broesche had driven his car to within three or four feet of Mrs. Bullock before he stopped to talk with the patrolman. Broesche apparently did not see Mrs. Bullock and when he went slowly forward toward the Gulf to cut to his left, he ran the car over Mrs. Bullock inflicting severe and painful injuries to her.

Andy Kyzar, a passenger in the Broesche car, testified that he was in the right-hand front seat of the Broesche car and that when they parked, he walked down toward the waters of the Gulf and passed Mrs. Bullock lying on the blanket between the Broesche car and the water and that she was not moving and was apparently asleep. He stayed at the water's edge for a few minutes and came back to get into the car. Mrs. Bullock was apparently still asleep. He thought that Broesche was going to back out of the slot and when Broesche started forward, Kyzar attempted to holler, but, using his phraseology, he tried to speak and nothing came out. Mrs. Bullock, however, denied being asleep but also stated that she was never aware of the presence of the Broesche car, even though it was driven up to only a few feet from her and though the car was parked there for more than ten minutes. Many people were on the beach. Some were lying on the sands of the beach sunbathing, and many were in the water. There is testimony that the beach was noisy. There was testimony from Kyzar that it was not customary for people to sunbathe or lie out on the beach in an open slot between other parked cars.

At the conclusion of the testimony, the trial court submitted substantially the following special issues to the jury: (1) Charles Rodney Broesche's lookout, (2) proximate cause, (3) excessive speed, (4) proximate cause, (5) whether Charles Rodney Broesche was a reckless and incompetent driver, (6) whether Charles Francis Broesche (the father) should have known that his son was a reckless and incompetent driver, (7) whether the father was negligent under the circumstances in allowing the son to drive the car, (8) whether Mrs. Bullock maintained a proper lookout, (9) proximate cause, and (10) the damage issue. The jury found that the Broesche boy failed to keep a proper lookout and that such was a proximate cause of the accident; that his speed was not excessive; that the father should have known that his son was a reckless and incompetent driver, and that it was negligence for the father to permit the son to drive the car; that Mrs. Bullock did not fail to keep a proper lookout. Damages were assessed against appellants, father and son, at $44,500.00, jointly and severally.

Appellants attack the judgment of the trial court by forty-eight points of error, the substance of which are: failure of the trial court to submit to the jury three groups of special issues inquiring as to whether Mrs. Bullock was negligent; the failure of the trial court to submit the issue of unavoidable accident; points raising the issue that there is no evidence or insufficient evidence to show that Charles R. Broesche was a reckless driver or an incompetent driver; that special issue no. 5 above is duplicitous and multifarious; that there is no evidence or insufficient evidence to sustain the jury's answer to special issue no. 6 above; that the court erred in refusing to submit the issue of proximate cause on the negligent entrustment theory, and that the jury's verdict was grossly excessive.

We first discuss the alleged errors of the trial court regarding the theory of negligent entrustment. The evidence shows that Charles Rodney Broesche, a minor at the time of the accident in question, had

received a speeding ticket in October of 1962, a speeding ticket in January of 1963, a warning letter from the Texas Department of Public Safety in April, 1963, a speeding ticket in December of 1963, a ticket for contest of speed in March of 1964, and a speeding ticket in October of 1964. In addition, the young man had received a ticket for running a red light in March of 1964. He was first licensed to drive an automobile when he was 16 years of age, in 1962. Broesche had been driving for only about three years when the accident occurred, and in that brief period of time, he had been cited and paid fines for seven moving traffic violations and had received a letter from the Department of Public Safety reprimanding him for his driving. His father had witnessed other acts of reckless driving, principally, his son's pulling in and out of the driveway too fast and heedlessly. The father had reprimanded and restricted him for his conduct. There is ample evidence that the father, Charles Francis Broesche, knew that his son had received the traffic tickets and had paid fines for same, and that the father had personally witnessed improper and rash acts of his son in connection with his driving.

While proof of only one previous traffic violation is grossly inadequate to establish incompetency or recklessness (Mayer v. Johnson, 148 S.W.2d 454 (Tex. Civ.App.), writ dismd., judg. corr.), and proof of two moving violations or accidents within a two year period prior to the accident made the basis of the suit, is probably insufficient (Fambro v. Sparks, 86 Ga.App. 726, 72 S.E.2d 473 (Court of Appeals, Georgia), in this case the evidence presents proof of seven citations for moving traffic violations, a warning letter, disciplinary actions and restrictions taken against the minor driver because of his driving. All of the violations occurred within the span of three years prior to the entrustment. We believe that there is evidence and that it is sufficient to show that Charles Rodney Broesche was a reck-

less and incompetent driver, and that his father had knowledge of same. It is recognized that the proof is difficult on this question, and while it cannot be said that the above evidence or similar evidence is entirely satisfactory, yet there is some evidence, and we believe sufficient evidence, for the submission of appropriate special issues to the jury upon the question of recklessness and incompetency and Mr. Broesche's knowledge thereof. Seinsheimer v. Burkhart, 132 Tex. 336, 122 S. W.2d 1063, 1067 (Tex.Com.App.), opinion adopted; McIntire v. Sellers, 311 S.W.2d 886 (Tex.Civ.App.), writ ref. n. r. e.

We overrule appellants' contention that the issue as submitted to the jury inquiring whether the Broesche boy was a *reckless and incompetent* driver is duplicitous and multifarious. While there is some difference in the exact definition of the words, a person may be reckless and incompetent by reason of his recklessness and may be reckless by reason of his incompetence. Moreover, the appellees by submission of the two terms in one special issue, added to their burden of proof by use of the word "and," and we see no harm and no reversible error in the submission of the issue. The terms "reckless and incompetent" appear in several opinions involving negligent entrustment, and a similar special issue has been expressly approved. McIntire v. Sellers, supra. See also Mundy v. Pirie-Slaughter Motor Co., 146 Tex. 314, 206 S.W.2d 587; Russell Const. Company v. Ponder, 143 Tex. 412, 186 S.W.2d 233 (Tex.Sup.). Appellants did not request that the words be defined. The ultimate issue was whether Broesche, by virtue of his driving habits, was careless and reckless to the extent that he was not suitable or adequate for the purpose of safely operating an automobile.

Appellants contend that the finding of negligence on the part of the father, Charles Francis Broesche, in special issue number seven requires a specific finding of proximate cause by the jury

for liability to be imposed on the father under the negligent entrustment doctrine. The contention is that a specific jury finding that the entrustment was a proximate cause of the occurrence in question is necessary. There is consistent authority to the contrary. It is true that the negligence of the entrustor, the owner of the vehicle, must be a proximate cause of the accident. Mundy v. Pirie-Slaughter Motor Co., supra. But the required proof of proximate cause differs in negligent entrustment cases. That the issue of proximate cause as it concerns the entrustor's act is not a jury question was clearly shown in Spratling v. Butler, 150 Tex. 369, 240 S.W.2d 1016 (Tex.Sup.). The Supreme Court said in that case:

> "In order to establish proximate causation, plaintiff must show that Dickson (unlicensed driver) operated the automobile negligently (that is, in a manner that was negligent regardless of the lack of a driver's license) and that such negligence was a proximate cause of the collision. * * * If, after the automobile is entrusted to such driver, he operates it negligently, and thereby causes damages to a third person, the causal connection is shown between the negligence of the owner in lending him the automobile and the damage to the third person."

> Page 1017, quoting from Mundy v. Pirie-Slaughter Motor Co., supra.

Of course, if the entrusting of the automobile involves the violation of a statute, negligence per se is shown. Such was the circumstance in the Mundy case, supra, where the entrustment of a car to an unlicensed driver was involved. When recklessness and incompetency are involved, it is necessary that a specific finding of negligence on the part of the entrustor be made by the jury. Compare Mundy v. Pirie-Slaughter Motor Co., supra, with Seinsheimer v. Burkhart, supra. Findings of negligence and proximate cause on the part of the entrustee-borrower is all that

is required, and it is not necessary to submit a special issue concerning the owner's negligence as being a proximate cause of the accident since the causal connection is shown between the negligence of the owner in lending the automobile and the injury to the third person, appellee here. McIntire v. Sellers, supra; Spratling v. Butler, supra; 9 Baylor L.Rev. 217, 218. See also Restatement of the Law of Torts (2d Ed.), Sec. 390; 60 C.J.S. Motor Vehicles § 431, p. 1057. We overrule appellants' contention.

By points 1–7 inclusive, the appellants complaint that the trial court refused to submit special issues to the jury of a defensive nature which might show that Mrs. Bullock was negligent and which proximately caused the accident in question. The issues requested and which were properly preserved, were as follows in substance:

(1) Was Mrs. Bullock's "act in placing herself where she did on the beach" negligence, and was this a proximate cause?

(2) Was Mrs. Bullock's "act in remaining where she did on the beach, after her automobile was driven off * * * negligence and proximate cause?

(3) Whether or not "At the time and on the occasion in question, Mrs. Bullock was asleep," and whether such negligence was a proximate cause.

Appellees take the position that none of these acts could have been a proximate cause of the accident, and that the issues above requested were not ultimate issues and were merely shades and fragments of the lookout issue submitted, which the jury answered in the negative. As primary negligence, the trial court submitted only proper lookout and excessive speed in favor of the plaintiff-appellees' case. Proper lookout and proximate cause were answered favorably to the appellee. The only special issue submitted in favor of the defendant-appellants' defense was proper

lookout by Mrs. Bullock. The issue was answered favorably to the appellee, Mrs. Bullock. Appellants filed a general plea of contributory negligence to which no exception was taken. The appellants are therefore entitled to a submission of each act of contributory negligence raised by the evidence. Agnew v. Coleman County Elec. Co-Op., 153 Tex. 587, 272 S.W.2d 877 (Tex.Sup.); Kainer v. Walker, 377 S.W. 2d 613 (Tex.Sup.). It is also well settled that the jury is not required to believe an interested party's testimony and that such party's testimony raises a jury issue only. Simmonds v. St. Louis B. & M. Ry. Co., 127 Tex. 23, 91 S.W.2d 332. Further, it is the law that the issues must be determined as of the time the case is submitted to the jury and not in light of the jury's answers thereafter. Whitfill v. Hunt, 387 S.W.2d 653 (Tex.Sup.). Applying the above from the point of view of issues raised by the evidence, we have only the fact that Charles Broesche was waved over by a Highway Patrolman, and went into an available space between two cars, facing the beach; that at the time Mrs. Bullock was lying on a quilt not more than three or four feet from the front end of the car and that she was asleep. We also have the testimony of both Charles Rodney Broesche and Andy Kyzar to the effect that it was not customary for persons to sunbathe (or go to sleep) in open spaces on the beach or, in other words, in places except in front of their own cars. The jury was also entitled to take into consideration the admission of Mrs. Bullock that she voluntarily placed herself in such a position. Under these circumstances, we believe it is clear that appellants were entitled to a submission of an issue of whether or not her act in placing herself where she did contrary to the usual custom, was negligence, and whether that was a proximate cause of the accident. It cannot be said that the issue of proper lookout includes the issue of placing herself in an unprotected position. Whitfill v. Hunt, supra, and see Jackson v. McCrary, 148 S.W. 2d 942 (Tex.Civ.App.), writ ref. In the latter case, it was held that where a plaintiff exercises due care only after negligently placing herself in a position of danger, she cannot recover if, through operation of her prior negligence, she is injured. See also Fort Worth & R. G. Ry. Co. v. Sageser, 37 S.W.2d 826 (Tex.Civ. App.), no writ; Townsend v. Young, 114 S.W.2d 296 (Tex.Civ.App.), no writ hist.; Flowers v. Wilson, 319 S.W.2d 199 (Tex. Civ.App.), no writ hist.; Haddox v. Futrell, 321 S.W.2d 110 (Tex.Civ.App.), no writ hist.; Christian v. Marin & Co., 384 S.W.2d 202 (Tex.Civ.App.), writ ref., n. r. e.; Ingram v. Texas Industries, Inc., 396 S.W.2d 423 (Tex.Civ.App.), writ ref., n. r. e. We believe it is clear that the issues of placing herself where she did on the beach and Mrs. Bullock's act in remaining where she did on the beach after her automobile was driven off by her children are entirely separate and independent issues from the issue of proper lookout, and that the trial court should have submitted the issues to the jury. We can make no observation as to how the jury would have answered them, but appellants' right to have the issues submitted is clear. Appellants were thereby deprived of valid defenses raised by the evidence. Under the evidence the jury could have believed, (1) that Mrs. Bullock's car was driven into the space later occupied by the Broesche car, that she went to sleep and that later the Bullock daughters took the car and left, thus leaving her unprotected, or (2) that the Bullock car was driven into the space later occupied by the Broesche car and the Bullock daughters took the Bullock car and left, while Mrs. Bullock was still awake, thus leaving the open space, and then Mrs. Bullock went to sleep, or (3) that Mrs. Bullock was awake in front of the open space when the Broesche car drove up; that she watched the Broesche car drive up to within three or four feet of her, saw Charles Rodney Broesche get out of the car, looking backwards (without seeing her), saw the Highway Patrolman come up, saw Andy Kyzar walk past her to the Gulf and back, saw Charles Rodney

Broesche get back into the car without looking forward and during all of this time, still remained within three or four feet in front of the Broesche car, without moving or otherwise making her presence known. The above are some of the permissible conclusions under the evidence in the record, and we think it is clear that the requested special issues were vital to the defense of this case by appellants, and that the trial court inadvertently committed reversible error in failing to submit the requested issues set out above. If Mrs. Bullock had not placed herself in an exposed position up to and including the time of the accident, and if she had not remained in the exposed position, it is clear that the jury had the right to believe that the accident would not have happened. We also believe it clear that if she had not been asleep, under the circumstances, she would have then known and realized that Rodney Broesche did not see her, and would either have moved, attracted his attention, or just before his car moved forward, she would have gotten out of the way. The only issue even remotely connected with proper lookout by way of nuance is the third requested issue above, whether Mrs. Bullock was asleep, and we believe that under the circumstances that issue was entirely separate and in no manner a shade or fragment of the lookout issue. The best discussions of contributory negligence is found in the cases of Texas & N. O. Ry. Co. v. Rooks, 293 S.W. 554 (Tex.Com. App.), and Walgreen-Texas Co. v. Shivers, 137 Tex. 493, 154 S.W.2d 625. We find the rules applicable here. Contributory negligence is generally a question of fact for the jury's determination. Alamo Motor Lines v. Maldonado, 271 S.W.2d 693 (Tex. Civ.App.), writ ref., n. r. e.; Owens v. Acme Oil Co., 408 S.W.2d 947 (Tex.Civ. App.), writ ref., n. r. e., and cases cited. See Rules 277 and 279, Texas Rules of Civil Procedure.

■ What we have said above is equally applicable to the failure of the trial court to submit the issue of unavoidable accident. Again, submission of the issue must be determined at the time the case is submitted to the jury and not in light of the jury's answers thereafter. Whitfill v. Hunt, supra. The issue is raised if there is evidence that the accident resulted from something other than some negligence of the parties to the occurrence. Here one could reasonably conclude that the cause of the accident was: that it happened without the negligence of either Mrs. Bullock or Broesche, or, secondly, that the acts of the third parties, i. e., the children in moving the car, together with the roar and the noise of the surf were causes, or, thirdly, the obstruction of Broesche's view of Mrs. Bullock by reason of her close proximity to the front of his car and the blocking of his view by the hood of his car was the cause. It cannot reasonably be said that the Bullock children were parties to the event, i. e., the accident itself, which would require the submission of a sole proximate cause issue. See Dallas Ry. & Terminal Co. v. Bailey, 151 Tex. 359, 250 S.W.2d 379. And see Luvual v. Henke & Pillot, Division of Kroger Co., 366 S.W.2d 831 (Tex. Civ.App.), writ ref., n. r. e.; Kuykendall v. Doose, 260 S.W.2d 435 (Tex.Civ.App.), writ ref., n. r. e.; Shaw v. Null, 397 S. W.2d 523 (Tex.Civ.App.), no writ; Foremost Dairies, Inc. v. McClung, 421 S.W.2d 178 (Tex.Civ.App.), writ ref., n. r. e. A jury issue is raised as to unavoidable accident if the evidence shows the existence of an obstacle that might obstruct the view, or shows some cause other than the negligence of the parties, and the evidence must be construed in the light most favorable to submission of the issue. Vergauwen v. Parsons, 294 S.W.2d 863 (Tex.Civ.App.), no writ hist.; Hodges, Special Issue Submission in Texas, Sec. 21, pp. 56–58. We sustain appellants' contentions.

■ We have carefully examined the testimony with regard to the damages assessed by the jury, and without stating the facts in detail, we are of the opinion that the jury was justified in its finding as to the amount of damages. Mrs. Bullock

suffered severe personal injuries and excessive pain and suffering, loss of income and loss of services as a wife and mother, and her suffering and disability continues. There is no showing that the jury was motivated by bias or sympathy. The measure of damages cannot be measured mathematically, and each case must be measured by its own facts. Considerable discretion and latitude must necessarily be vested in the jury. We find the verdict to be within the limits of reason. Sumners Road Boring, Inc. v. Thompson, 393 S.W.2d 690 (Tex.Civ.App.), writ ref., n. r. e.; Camco, Inc. v. Evans, 377 S.W.2d 703 (Tex.Civ. App.), writ ref., n. r. e.; Gilbert v. Haigler, 363 S.W.2d 337 (Tex.Civ.App.), writ ref., n. r. e.

For failure to submit necessary defensive special issues under appellants' points of error numbers one through eight which were raised by the testimony and which we consider to be vital to appellants' defense, the judgment of the trial court is reversed and the cause is remanded to the trial court for further proceedings.