### CLEM LUMBER CO. v. FISHER et al.
#### No. 1602.

Court of Civil Appeals of Texas. Waco.
May 30, 1935.

Rehearing Denied June 27, 1935.

Touchstone, Wight, Gormley & Price, of Dallas, Angus Wynne, of Longview, and Read, Lowrance & Bates, of Dallas, for appellant.

Sidney Latham and W. Edward Lee, both of Longview, for appellees.

ALEXANDER, Justice.

Charles Fisher, a minor, and his mother, Mrs. Delphine Fisher, in a trial before a jury, recovered judgment against W. L. Gibbs, Jr., and Clem Lumber Company, a corporation, jointly and severally, for a total sum of $14,395.25, for damages growing out of certain personal injuries suffered by Charles Fisher as the result of a collision between a truck driven by Gibbs and an automobile in which Fisher was riding. Clem Lumber Company alone appealed.

The appellant assigns as error the refusal of the trial court to give an in-

structed verdict in its behalf. Giving the evidence that construction most favorable to appellees, the facts are these: Clem Lumber Company owned a truck that was more than 70 inches in width, which truck was not equipped with clearance lamps to mark the outline thereof, as required by Vernon's Ann. P. C. art. 827a, § 9 (Acts 1933, 43d Leg., p. 45, c. 20). This truck was regularly operated on the public highways of the state by the Clem Lumber Company in the daytime, but there was no evidence that it had ever been so operated at nighttime prior to the collision in question. W. L. Gibbs, Jr., was a bookkeeper for the Clem Lumber Company. He had no authority to drive the company's truck and had never before done so. On the night in question, which was Saturday night, the truck was stored in the lumber company's garage, and, as usual, the ignition locked and the keys deposited in the lumber company's office. Some time during the night, Gibbs, the bookkeeper, without the knowledge or consent of the lumber company, went to the company's office, to which he had access, secured the keys, took possession of the truck, and went on a drive wholly for his personal pleasure. While so driving he jammed the left front corner of the truck against an automobile in which Charles Fisher was riding and injured him. The trial court submitted several issues to the jury for the purpose of determining the amount of the damages suffered by the plaintiffs and whether or not the plaintiff Charles Fisher was guilty of contributory negligence, but submitted only one issue for the purpose of determining whether or not the defendants were responsible for the injuries suffered by Fisher. That issue was as follows:

"Special Issue No. 1. Do you find and believe from a preponderance of the evidence that the habits of W. L. Gibbs in drinking intoxicating liquor were known to the officials or manager of Clem Lumber Company prior to June 19, 1932?" To which the jury answered: "Yes."

The appellees in their brief concede that the evidence is insufficient to establish the liability of Clem Lumber Company on the theory of master and servant or principal and agent. They contend, however, that the judgment can be sustained on either one of two other theories, the first one of which is that the lumber company was negligent in failing to equip its truck with lamps as provided in Vernon's Ann. P. C., art. 827a, above cited, and that such negligence was the proximate cause of the injury to Charles Fisher. The above statute makes it unlawful for any owner to operate, or permit to be operated, on the highways of this state at nighttime, any vehicle of more than 70 inches in width that is not equipped with proper lamps to mark the outline thereof. It may be conceded, as contended by appellees, that it would have been negligence per se for the lumber company to have operated the truck upon the public highways at nighttime, or to have permitted the same to be so operated, in the absence of lamps to mark the outline thereof, as required by the statutes; but the lumber company was not so operating the truck at the time of the collision and did not permit the same to be so operated. Certainly it was not negligence for the company to own and have in its possession such a truck. So long as the truck remained in the garage where it had been placed by the lumber company, there was no danger of injury to any one. Consequently, the liability of the company cannot be sustained on this theory. Gordon v. Texas & Pacific Mercantile & Mfg. Co. (Tex. Civ. App.) 190 S. W. 748.

Appellees' second theory is that the truck unequipped with lamps, as required by the statutes, was a dangerous instrument, and Gibbs was a known habitual drunkard and consequently an incompetent driver, and the lumber company was guilty of negligence in permitting Gibbs to have access to the keys to the truck, and such negligence was the proximate cause of the injuries.

In the first place, we do not think the evidence is sufficient to raise an issue for the jury that Gibbs was a known habitual drunkard. R. D. Gibbs, the local manager of the lumber company, and the defendant, W. L. Gibbs, Jr., were the only witnesses who testified concerning this matter. They were called as witnesses by the plaintiff. R. D. Gibbs testified that he was a brother of W. L. Gibbs, Jr., and that he had never seen his brother take a drink of liquor in his life and had never known of his taking a drink. There were no circumstances tending to contradict his testimony on this point. W. L. Gibbs, Jr., testified that he was not a heavy drinker but a moderate drinker of alcoholic liquors; that he had been a moderate consumer of alcoholic liquors for about three years, taking a drink on the average of about once a month. He testified that on

the night in question, after going for a drive in the truck, he went to some place in the country and drank some beer. There is a little uncertainty in his testimony as to whether he drank two or four bottles of beer. There was no other evidence on this issue. This evidence was wholly insufficient to present an issue that W. L. Gibbs, Jr., was such an habitual consumer of intoxicating liquor as to constitute him an incompetent driver. Moreover, there was no proof that the corporation had notice of his habits of consuming intoxicating liquor. There was no evidence that Gibbs was intoxicated at the time he took possession of the truck. Neither was there any evidence that he had ever had an automobile collision prior to this one, nor that he had ever driven any other automobile while under the influence of intoxicating liquor.

■ But, if it be conceded that W. L. Gibbs, Jr., was an habitual drunkard, and that the lumber company knew this fact, and allowed him to have access to the office where the keys to the truck were kept, and that the truck when operated on the highways at nighttime, because of lack of equipment, was a dangerous instrumentality, yet it cannot be said that the conduct of the company in allowing W. L. Gibbs, Jr., to have access to the place where the keys to the truck were kept was, under the circumstances, negligence, nor that such negligence, if any, was the proximate cause of Fisher's injuries. The lumber company could hardly be required to anticipate that Gibbs would take possession of the truck wholly without authority and that he would operate it without the necessary lights upon the public highways at night while he was in a state of intoxication in violation of the law. 45 C. J. p. 936. The causal connection between the conduct of the lumber company in allowing Gibbs to have access to the office where the keys to the truck were kept and the injury caused by the operation of the truck by Gibbs was too remote. 30 Tex. Jur. 699; Seale v. G., C. & S. F. Ry. Co., 65 Tex. 274, 57 Am. Rep. 602; T. & P. Ry. Co. v. Bigham, 90 Tex. 223, 38 S. W. 162; Worsham Buick Co. v. Isaacs, 121 Tex. 587, 51 S.W.(2d) 277, par. 4, 86 A. L. R. 232.

In our opinion, the plaintiff has wholly failed to make out a cause of action against Clem Lumber Company. It appears that the case has been fully developed and that no useful purpose would be served by re-manding it for a new trial. The judgment of the trial court in favor of the plaintiffs against the defendant W. L. Gibbs, Jr. is affirmed. In all other respects the judgment is reversed and judgment here rendered that plaintiffs take nothing against the Clem Lumber Company.

STANFORD, Justice.

Not being able to agree with my associates, I hereby file the following dissenting opinion:

## Statement of the Nature and Result of the Suit.

Charles Fisher, a minor, brought this suit in the district court of Gregg county, by his next friend, C. E. Faulk, and in the suit was joined as plaintiff Mrs. Delphine Fisher, mother of Charles Fisher, she being a widow. Appellees sought to recover damages based upon injuries sustained by the plaintiff Charles Fisher in an automobile collision occurring on June 19, 1932. The plaintiff further alleged that Gibbs was in the habit of drinking intoxicating liquors, that the Clem Lumber Company had knowledge of his said habit, and made a practice of permitting him to use its truck for his own personal use and convenience, and that at the time of the collision Gibbs was in an intoxicated state and condition, and had been permitted by the Clem Lumber Company to use its truck while in said condition. The case was tried before a jury on special issues. Aside from the issues on the question of damages, only three issues were submitted, which were, with their answers thereto, as follows: "Special Issue No. 1: Do you find and believe from a preponderance of the evidence that the habits of W. L. Gibbs, Jr., in drinking intoxicating liquor were known to the officials or manager of the Clem Lumber Company prior to June 19, 1932?" To which first issue the jury answered: "Yes."

The jury having found that the habits of W. L. Gibbs, Jr., in drinking intoxicating liquor were known to the officials or manager of the Clem Lumber Company prior to June 19, 1932, and said lumber company being a corporation, it necessarily follows that on and prior to said date the said lumber company had full knowledge of the fact, and that such knowledge of said lumber company was knowledge to the corporation.

"Special Issue No. 2: Do you find and believe from a preponderance of the evidence that Charles Fisher exercised ordi-

nary care for his own safety in riding upon the fender of the Ford roadster in question, when there were five other persons riding in and on said Ford roadster?" To which the jury answered: "No."

"Special Issue No. 3: Do you find and believe from a preponderance of the evidence that the failure of Charles Fisher to exercise ordinary care for his own safety in riding upon the fender of the roadster when there were riding in and on said Ford roadster five other persons, if you have so found, caused or contributed to cause his injuries, if any?" To which the jury answered: "No."

Based on the answers of the jury, the court rendered judgment in favor of the plaintiff Charles Fisher against the defendants W. L. Gibbs, Jr., and Clem Lumber Company, for the sum of $11,395.25, and in favor of the plaintiff Mrs. Delphine Fisher against the same defendants for the sum of $3,000. An amended motion for new trial was in all things overruled by the court. Clem Lumber Company duly filed a supersedeas bond within the time required by law.

### Statement.

Recovery was sought against Clem Lumber Company on two theories: (1) That Charles Fisher had been injured through the negligent operation of the Clem Lumber Company's truck by one of its employees in the course of employment; (2) if such employee driving said truck was not in the course of employment, he was a habitual drunkard, known to be such to the lumber company, which, in view of such knowledge, permitted him to use the truck when on his personal business. It is undisputed that Fisher sustained his injuries on Sunday night, June 19, 1932, while riding on the left-hand corner of a Ford roadster which came in contact with a truck driven by W. L. Gibbs, Jr. The record shows that Gibbs had the said truck out on Sunday night, June 19, 1932, and used same on the public road at night without any lights, and used same in going to the residence of Newt Sanders, with others, for the purpose of drinking beer, and further that the officials and manager of the Clem Lumber Company had knowledge thereof prior to June 19, 1932; that the truck bed was 82 inches wide, 12 inches wider than that permitted by law, and that it was not equipped on the front with a clearance light or reflector, and that the truck had been used in that condition for some time prior to the injury; that the part of the truck which struck plaintiff was the front left-hand corner of the truck bed; that W. L. Gibbs, Jr., one of the defendants below, resided up stairs in the office building of the Clem Lumber Company, and on Sunday night, June 19, 1932, had access to the keys of the company trucks, including the truck involved, until a late hour in the night.

### Opinion.

It has been repeatedly held in this state that, where a statute requires the doing of an act, or prohibits the doing thereof, the violation of such statute constitutes negligence as a matter of law. H. & T. C. Ry. Co. v. J. F. Wilson, 60 Tex. 142, 143; T. & P. Ry. Co. v. Baker (Tex. Com. App.) 215 S. W. 556; Carvel v. Kusel (Tex. Civ. App.) 205 S. W. 941; Franklin v. Houston Electric Co. (Tex. Civ. App.) 286 S. W. 578; Estes v. Davis (Tex. Civ. App.) 28 S.W.(2d) 565; Shaver v. Mason (Tex. Civ. App.) 13 S.W.(2d) 450; M., K. & T. Ry. Co. v. Faulkner, 88 Tex. 649, 32 S. W. 883.

Article 827a of the Penal Code (Vernon's annotated), §§ 2, 9, regulating the operation of vehicles on the highways, declares:

"It shall be unlawful and constitute a misdemeanor for any person to drive, operate, or move, or for the owner to cause or permit to be driven, operated, or moved on any highway, any vehicle or vehicles of a size or weight exceeding the limitations stated in this Act or any vehicle or vehicles which are not constructed or equipped as required in this Act. * * *

"Every motor vehicle, other than any road roller, road machinery or farm tractor, having a width at any part in excess of seventy (70) inches shall carry two clearance lamps on the left side of such vehicle, one located at the front and displaying a white light visible under normal atmospheric conditions from a distance of five hundred (500) feet to the front of the vehicle and the other located at the rear of the vehicle and displaying a red or yellow light visible under like conditions from a distance of five hundred (500) feet to the rear of the vehicle, both of which lights shall be kept lighted while any such vehicle is upon the highway from one-half hour after sunset to one-half hour before sunrise. A motor vehicle requiring clearance lights hereunder may, in lieu of

such clearance lights, be equipped with adequate reflectors conforming as to color and marginal location to the requirements for clearance lights."

The statement of facts shows that defendant's motortruck was wider than the statutory limit of 70 inches, and that it was not equipped with clearance lamps or reflector on the left side of such vehicle, as required by the above statute, and that the truck had been in use by the Clem Lumber Company in this condition for approximately sixteen months prior to the date of the accident.

The Clem Lumber Company's failure to equip its truck as required by the above-quoted statute and using same at night without such equipment constituted negligence per se, and the court was fully justified in refusing to submit to the jury any other issue of negligence arising out of these facts.

Negligence is the breach of a legal duty. It is immaterial whether the duty is one to be measured by the standards of common law or is one imposed by statute. Where the standard of conduct is fixed by a statute designed for the promotion of safety and the protection of others, and one is charged with having violated that standard of conduct, the issue is not upon the question of negligence but upon the violation of the statute. The evidence in this case convicts the defendant of continuous flagrant violation of a safety statute for a period of more than sixteen months preceding the injury to plaintiff. Defendant is therefore guilty of negligence per se under the undisputed facts, and there was no issue to be submitted. The evidence shows that the Clem Lumber Company's negligence in violating a statutory provision with reference to equipping its truck was the direct and proximate cause of plaintiff's injury.

### Appellees' Third Proposition.

Appellees admit that, even though appellant was guilty of negligence per se, it was still necessary for appellee to show that such negligence was the proximate cause of the injury complained of. It is not necessary that the negligence be the sole cause of the result. Texas Power & Light Co. v. Culwell (Tex. Com. App.) 34 S.W.(2d) 820; G., C. & S. F. Ry. Co. v. Ballew (Tex. Civ. App.) 39 S.W.(2d) 180, 182.

" 'Proximate cause' means such act wanting in ordinary care as actually aided in producing the injury as a direct and existing cause. It need not be the sole cause, but it must be a concurring cause such as might reasonably have been contemplated as involving the result under the attending circumstances." G., C. & S. F. Railway Co. v. Ballew, supra.

It cannot be disputed that the negligent acts of W. L. Gibbs, Jr., in taking out the truck and using it at night on the highway caused, or contributed to cause, plaintiff's injury. However, even if it be conceded that appellant was not responsible for the acts of W. L. Gibbs, Jr., under this theory of the case, it cannot escape liability because said Gibbs was concurrently negligent. The act of a third person, intervening and contributing a condition necessary to the injurious effect of the original negligence, will not excuse the first wrongdoer if such act ought to have been foreseen. The original negligence still remains the culpable and direct cause of the injury.

Where the statute was designed to prevent an injury of the character in dispute, the issue of foreseeableness is to be decided against the actor by reason of the fact that the purpose of the statute was the prevention of such damage and the actor is forewarned of the dangers attendant upon his violation of it. By the terms of the very law that appellant violated, it is charged with foreseeableness or anticipation of the injury.

The testimony in this case was such as to wholly justify the court in assuming the existence of the proximate cause as a matter of law, and, where the evidence is such that ordinary minds could not differ with respect thereto, the court does not err in making such assumption. Paris & G. N. Ry. Co. v. Stafford (Tex. Com. App.) 53 S.W.(2d) 1019; McCoy v. Beach-Wittman Co. (Tex. Civ. App.) 22 S.W.(2d) 714, 716; Jones v. Gibson (Tex. Civ. App.) 18 S.W. (2d) 744, 746.

Indeed, it was held in M.-K. T. Ry. Co. v. Cheek (Tex. Civ. App.) 18 S.W.(2d) 804, 807: "When the state of the record is such that the proximity of the negligent act, or the negligent failure to act, may be assumed as a matter of law, it is error to submit that issue to the jury. Only those issues about which reasonable minds may differ should be referred to the jury." T. & P. Ry. Co. v. McCoy, 90 Tex. 264, 38 S. W. 36; G., C. & S. F. Ry. Co. v. Rowland, 90 Tex. 365, 38 S. W. 756; Culpepper

v. International & G. N. Ry. Co., 90 Tex. 627, 40 S. W. 386.

In the instant case, it was shown by a number of witnesses that plaintiff was struck by the left-hand corner of the defendant's truck; in other words, the very portion of the truck against which the public was to be protected by compliance with the requirements of article 827a, § 9, of the Penal Code, caused the injury to plaintiff. There is no dispute whatever on this testimony, and, in view of the undisputed record, no reasonable minds could find otherwise than that defendant's negligence in failing to equip its truck as required by law was ' the direct, proximate cause of plaintiff's injury.

### Appellees' Fourth Proposition.

The evidence shows that W. L. Gibbs, Jr., made his residence on the premises of the defendant Clem Lumber Company, and had at all times in his possession the keys to the office in which the ignition key to the truck in question was kept. It was shown that the injury to the plaintiff Charles Fisher was occasioned by the extra width of defendant's truck, and, where no conflicting testimony is offered, the court is wholly justified in refusing to submit any issues based on such testimony. The said W. L. Gibbs, Jr., was accustomed to drinking, and on the night of the injury the ˙record shows that W. L. Gibbs, Jr., was out until late in the night driving the same truck belonging to the Clem Lumber Company, and that at said late hour of the night he, the said W. L. Gibbs, Jr., driv-ing said heavy truck, met on the highway the said other automobile, and that the drivers of said automobiles did all that could be done to prevent a collision of said automobile with said truck; that those operating the automobile drove as far as they could to one side without driving into the ditch, while the said W. L. Gibbs, Jr., refused to give any part of the road, but drove rapidly, meeting said truck at night about the middle of the highway, and in a manner so as to crowd those driving the automobile entirely off the highway, and cause said car to be crowded into the ditch and to be overturned and said serious injuries inflicted. The record shows the truck had no lights and was being driven on the highway. The record further shows that the officers and manager of Clem Lumber Company had full knowledge of .the habit of W. L. Gibbs, Jr., in drinking intoxicating liquor.

### Appellees' Fifth Proposition.

There was ample testimony in the record to support the jury's finding that the Clem Lumber Company, through its official manager, knew of the habits of W. L. Gibbs, Jr., with reference to his drinking intoxicating liquor.

W. L. Gibbs, Jr., himself, admitted that for about three years he had been a moderate consumer of intoxicating liquor, that he was in daily contact with his brother, the manager of Clem Lumber Company's Longview office, and that prior to his coming to Longview he was in almost daily contact with his father, one of the vice presidents of the Clem Lumber Company, and with his second cousin, J. R. Clem, the president of the company. Based on this statement of facts, the jury was fully justified in finding that the officials of Clem Lumber Company ˙knew of the habits of W. L. Gibbs, Jr., with reference to his consumption of intoxicating liquor. See answer to first special issue.

### Appellees' Sixth Proposition.

The jury found that Charles Fisher, in riding upon the fenders of a Ford roadster, had not exercised ordinary care for his own safety. The jury also found that such failure did not cause or contribute to the cause of his injuries. In view of these findings, the court did not err in refusing to hold as a matter of law that Charles Fisher was not guilty of contributory negligence, proximately causing his injuries. However, the issue was submitted, and the jury has found thereon favorably to the plaintiff, and the defendant is bound thereby. Furthermore, the court by overruling defendant's motion for new trial and for judgment has indicated its approval of the jury's finding by entering a judgment in favor of the plaintiff.

W. L. Gibbs, Jr., among other things, testified by deposition as follows:

"Q: State what type of body, if any, was on the motor truck in which you were riding, giving the width of the truck body, if any, in feet and inches? A: A straight bed body six feet ten inches in width.

"Q: Is it not true that the truck you were driving did not have a light or reflector on the left-hand corner of the bed? A: No, it did not."

W. L. Gibbs, Jr., further testified by deposition as follows:

"Q: Did you find any marks of identification on that truck? A: On the front cross sill on the stake bed, which was a two by six or either three by six, it was broken back about fourteen or sixteen inches on the front end of it- and there was some flesh and blood and fragments of cloth that looked like the pants that Fisher had on."

"Special Issue No. 1: Do you find and believe from a preponderance of the evidence that the habits of W. L. Gibbs, Jr., in drinking intoxicating liquor were known to the officials or manager of the Clem Lumber Company prior to June 19, 1932?"

To which the jury answered: "Yes."

The judgment of the trial court is in all things affirmed.