## RUSSELL CONSTRUCTION COMPANY v. O. C. PONDER ER UX.

No. A-379. Decidel March 21, 1945.
(186 S. W., 2d Series, 233.)

*Marcus, Carrington & Weller,* of Beaumont, *Kemper & Cramer* and *John G. Cramer,* all of Houston, for petitioner.

The trial court erred in overruling petitioners motion for an instructed verdict, based on the theory that at the time of the collision, the driver of the truck was not operating same in the course of his employment, but was on a mission of his own. The Court of Civil Appeals was also in error in not sustaining this proposition of petitioner. Worsham-Buick Co. v. Isaacs, 126 Texas 546, 87 S. W. (2d) 252; Roberts v. Magnolia Pet. Co., 135 Texas 289, 143 S. W. (2d) 79; Morgan v. Luna, 114 S. W. (2d) 279; Kirklin v. Standard Coffee Co., 114 S. W. (2d) 263; Clem Lbr. Co. v. Fisher, 84 S. W. (2d) 282.

*Shivers & Keith,* of Port Arthur, *Lamar Cecil,* of Beaumont, for respondents.

There being ample evidence to support the jury's finding that the petitioner was guilty of numerous acts of negligence proximately causing the death of respondent's son, it was not error for the lower courts to hold that petitioner (Construction Company) was not entitled to an instructed verdict. Texas Co. v. Veloz, 162 S. W. 377; Sturtevant v. Pagel, 134 Texas 46, 130 S. W. (2d) 1017; Allen v. Bland, 168 S. W. 35; Seinsheimer v. Burkhart, 132 Texas 336, 122 S. W. (2d) 1063.

MR. JUDGE HICKMAN, of the Commission of Appeals, delivered the opinion for the Court.

In the trial court respondents O. C. Ponder and wife, Mrs. Myrtle May Ponder, were awarded damages against petitioner L. C. Russell, doing business as Russell Construction Company, on account of the death of their minor son, James Hilton Ponder, who lost his life in a collision between a bicycle on which he was riding and a truck owned by Russell. The trial court's judgment was affirmed by the Court of Civil Appeals. 182 S. W. (2d) 857.

The truck was being operated by Frank Reece, Jr., who was employed as a truck driver by petitioner to haul dirt to a construction project, a portion of the route being over a

public highway in Jefferson county. At the conclusion of his morning's work one Sunday, Reece drove the truck which had been assigned to him to the town of Groves where he intended to eat lunch at the house where he stayed, and the accident occurred on a street in Groves before he reached that house.

In answer to special issues the jury found that Reece was negligent in several respects, each of which acts of negligence was a proximate cause of the boy's death. In answer to other special issues the jury found that Russell was negligent in certain other respects, each of which acts of negligence was also a proximate cause of the boy's death. One group of findings was: (a) That prior to the day of the accident Frank Reece habitually operated the truck or trucks entrusted to him in such manner as likely to cause injury to others; (b) that Russell and his agents had knowledge of that fact; (c) with such knowledge it was negligence for them to entrust the truck to Reece on the day of the accident: (d) which negligence was a proximate cause of the death of James Hilton Ponder. In answer to another group of issues the jury found: (a) That the brakes on the truck assigned to Reece were not in good working order on the day of the accident; (b) which fact was known to Russell and his agents; (c) that it was negligence for Russell to assign to Reece a truck upon which the brakes were not in good working order; (d) which negligence was a proximate cause of the death of James Hilton Ponder. In answer to another issue the jury found that at the time and place in question Reece was operating said truck with the permission of Russell and his agents.

Petitioner takes the position that there was no evidence authorizing the trial court to submit this last mentioned special issue to the jury. He made no complaint in the Court of Civil Appeals that the evidence was insufficient to support the finding of the jury, but presented only the point that there was no evidence authorizing the submission of the issue to the jury, a question of law as to which we are not bound by the conclusion of the Court of Civil Appeals. From a consideration of the record as a whole we have concluded that it reflects some evidence of implied permission by Russell to Reece for the latter to use the truck in going for his lunch on the particular day of the accident.

Reece testified by deposition, as a witness for Russell, that he was driving the truck to Groves for lunch without Russell's knowledge or permission and contrary to his general instruc-

tions, but his testimony in detail as to the circumstances attendant upon his working on the particular day on which the accident occurred constituted some evidence, in our opinion, of an implied permission. According to his testimony as a rule he either brought his lunch with him to his work or bought it at a cafe about four blocks from the office of his employer from which he would walk to the cafe; that some of the employees would be permitted to drive to lunch in trucks, but such permission had never been granted him. There was testimony that he had driven it to lunch on other occasions. He was an orphan boy fifteen years of age at the time of the accident and was staying in the home of C. D. Northern in the town of Groves. The accident occurred on Sunday. Ordinarily he did not work on Sunday, but on the morning of the accident an agent of Russell came to Northern's home to get him (Reece) to work that day and waited for him to change to his work clothes. The agent then took him in a car belonging to Russell to the usual place of work and delivered to him a truck, the brakes of which were in a bad state of repair. Reece had complained to the foreman on the afternoon before about the condition of the truck. Further details of what transpired that morning can best be shown by copying a portion of Reece's testimony on cross examination:

"Q. When you first started out there, you were hauling this dirt to the Texas Company job? A. Yes, sir.

"Q. About eleven o'clock that Sunday morning they shut down the Texas Company job because not enough trucks to haul? A. Yes, sir.

"Q. And Danny Woods sent you to haul dirt from near the Atlantic to Winston Brothers plant? A. Yes, sir.

"Q. That was about five miles from Port Neches, that dirt pit, A. Not from where it was being hauled.

"Q. From the city down there, take the school building—you know where the school building is in Port Neches? A. Yes.

"Q. From there to the dirt pit is about five miles, isn't it? A. No, not that much.

"Q. How much then? A. About two and a half miles.

"Q. And you hauled a few loads of dirt, made three trips from the dirt pit over to the Winston Bros. Plant? A. Yes.

"Q. The Winston Bros. plant is right next to the school? A. Yes.

"Q. You make 3 round trips from eleven o'clock until twelve or twelve thirty? A. Yes.

"Q. Then you went back to get another load of dirt? A. Yes, sir.

"Q. And you found the trucks all gone, the drag line shut down?

"A. Yes.

"Q. It was Sunday; you didn't have a chance to get any lunch, and you were about three or four miles out in the country and everything was shut down? A. Yes.

"Q. And about that time you were only about a mile and a half from your house? A. Yes.

"Q. You were closer home than Port Neches, weren't you?

"A. I don't think it was.

"Q. It wasn't much further? A. No, not much further, but not as close as Port Neches was.

"Q. And you didn't think that the cafeterias on the job were open on Sunday, and you were going back to work as soon as you had eaten your lunch, and you would have come back to work except for the accident, is that correct? A. Yes."

■ This testimony reflects that Russell, through his agent, created a situation on the particular day of the accident from which it might well be inferred that he intended for Reece to use the truck entrusted to him to drive to some place for his lunch. "When a man is employed to work on any job the fact that he is a human with ordinary human habits and requirements is necessarily taken into consideration." United East and West Oil Co. v. Dyer, 139 Texas 318, 162 S. W. (2d) 680. Russell, through his agent, moved Reece about eleven o'clock that morning from his usual working place and when lunch time overtook him he found himself three or four miles out in the country with his other trucks all gone and the drag line shut down; there was no place out there for him to get his lunch. The natural thing was for him to go for lunch either to Port Neches or to Northern's house, which places were about the same distance away. He had as much authority to drive the truck to one place for lunch as to the other. It cannot be concluded that his employer intended for him to walk that distance to get his lunch and leave the truck which had been entrusted to him out there in the country. The jury evidently drew the inference from these facts that Russell, by creating this situation without leaving any specific instructions to the boy, impliedly gave his permission for him to drive the truck to lunch that day. It cannot be said, therefore, that those facts and circumstances did not constitute some evidence of implied permission. Certain it is that, at least, they constitute some evidence that Russell should have foreseen that Reece would likely drive the truck somewhere for his lunch, and it is not required that he should have been able to forsee the particular place to which he would drive it.

There was testimony that other employees frequently used Russell's truck in driving to lunch, and one witness testified

that Reece had theretofore driven a truck to Groves about the noon hour.

■ From the above it follows that this case comes within the rule, well established in this jurisdiction, that, if the owner of an automobile, knowing that its brakes are in bad working order, permits another to drive it upon the public highways, he becomes liable for injuries proximately caused by the inadequacy of the brakes. The same principle is applicable if the owner entrusts it to another for use upon the highways knowing that the one to whom it is entrusted is an incompetent and reckless driver. In each instance the owner's liability is based upon his own negligence in entrusting a dangerous instrumentality to another or in entrusting the automobile even though it be in good repair, to a known incompetent, thereby creating an instrument of danger. Seinsheimer et al v. Burkhart, 132 Texas 336, 122 S. W. (2d) 1063; Strutevant et al v. Pagel, et ux, 134 Texas 46, 130 S. W. (2d) 1017; Allen v. Bland, 168 S. W. 35 (error refused); Texas Co. v. Veloz, 162 S. W. 377.

3 In this case the jury has found that Russell's negligence in each of the respects above mentioned was a proximate cause of the death of James Hilton Ponder, and we are well convinced that such findings have substantial support in the evidence. The jury was warranted to conclude that Russell should have reasonably foreseen that injury might result to some members of the traveling public from his negligent act in assigning the truck to Reece for use by him in the manner shown. The fact that Reece was negligent in operating the truck and that his negligence was also a proximate cause of the injuries does not break the casual connection between Russell's negligent acts and the injury to the extent that it became in itself the cause of such injury. Reece's negligent acts were contributing or concurring causes operating in connection with Russell's negligent acts but not destroying their effect. Gulf C. & S. F. Ry Co. v. Ballew (Com. App.) 66 S. W. (2d) 659.

Much of respondent's brief is given to a discussion of the theory that, inasmuch as Russell's liability rests upon his own negligence in entrusting the truck with inadequate brakes to Reece for use on a highway, and the injuries were inflicted while it was being used on a highway and, in part, because of the condition of the brakes, it is immaterial whether Russell impliedly consented to its use by Reece to go for his lunch or whether he could have foreseen that he would do so; that Russell could not relieve himself of liability for his own negligence by proof

that Reece disobeyed his instructions and used the truck for his own convenience. That theory was apparently adopted by the Court of Civil Appeals. Under our view of the record, as reflected by the conclusions above announced, it is unnecessary for us to evaluate that theory and for that reason we withhold any expression of opinion thereon.

It is claimed that the trial court committed certain procedural errors. They are all discussed in the opinion of the Court of Civil Appeals and, in our opinion, are correctly decided by that court. No reason is perceived for our discussing any of them except the holding with regard to the question of the sufficiency of the objection to the charge for failure to exclude the expense of educating the child. As to that question we do not agree with the Court of Civil Appeals that it was required of the petitioner that he tender an instruction, since the objection but challenged the correctness of the instruction given. See Texas Employers' Ins. Ass'n v. Mallard, 143 Texas 77, 182 S. W. (2d) 1000. Rule 274. However, the Court of Civil Appeals correctly disposed of the point on another ground, and its ruling will therefore be affirmed.

It is ordered that the judgment of the Court of Civil Appeals, which affirms that of the trial court, be affirmed.

Opinion adopted by the Supreme Court March 21, 1945.