McCord McINTIRE, Appellant,

v.

Van A. SELLERS, by Next Friend, Appellee.

No. 10558.

Court of Civil Appeals of Texas.

Austin.

March 19, 1958.

Rehearing Denied April 9, 1958.

James R. Meyers, Coleman Gay, Austin, for appellant.

L. Tonnett Byrd, F. L. Kuykendall, Austin, for appellee.

ARCHER, Chief Justice.

This suit was filed by appellee for damages for permanent personal injuries sustained when a pickup truck, in which he was riding, was hit from the rear by an automobile owned by appellant and being driven by Jimmy Wilson. The car had been loaned by appellant to Wilson to make a personal trip and the suit is founded on the theory of "Negligent Entrustment."

The petition alleged, and plaintiff secured jury findings, that appellant was guilty of negligence in lending his automobile to Wilson without first ascertaining whether Wilson had a driver's license, or knew, or by the exercise of ordinary care should have known, that Wilson was a reckless and incompetent driver.

The case was tried with the aid of a jury which found that the injuries and damages were proximately caused by Wilson's negligent driving and that appellant was negligent in permitting Wilson to drive the car.

The defendant, appellant herein, filed his special exceptions, which were overruled and requested the submission of his special issue No. 1 which was refused.

Based on the jury's verdict, judgment was rendered in favor of appellee and against both Wilson and appellant for $36,293.45. Wilson has not appealed.

Appellant filed his motions for instructed verdict, and for judgment notwithstanding the verdict which were overruled.

The appeal is founded on 25 assignments of error and are to the effect that the Court erred in overruling the motion for instructed verdict, the motion for judgment notwithstanding the verdict, in overruling special exception No. 1, in refusing to submit defendant's requested issues Nos. 1 and 2, in failing to give special instruction No. 1 so as to include element of foreseeability, in holding that the evidence was sufficient to support the jury's finding in response to special issues Nos. 9, 11 and 12, in overruling special exception No. 2, in refusing to define "reckless and incompetent" as used in the charge, in permitting proof of Wilson's incompetence and recklessness by specific acts instead of by general reputation, in permitting proof that Wilson had pleaded guilty to being drunk on the public streets, in permitting proof that Wilson had pleaded guilty on several occasions to being drunk in a public place, and disturbing the peace, to running stop signs and lights, and driving without a driver's license, and driving while intoxicated, and that he was unable to pass driver's license

test, that he had been convicted of driving without a driver's license, and finally in including as a recoverable item of damage future nursing expense.

Appellant and a partner operate a "One Stop Fishing Center" under the name of "Sam, the Minnow Man" on the Fredericksburg Road outside of Austin.

Three or four days before the date of injury, and while appellant was out of town, Sam Davidson, the partner, employed Wilson as porter and general handyman for the business. Wilson had been recommended by a man named Hilliard who worked at a Barbecue Stand about 2 miles from the place of business. Appellant did not know what other investigation Mr. Davidson made but he respected Davidson's judgment.

Appellant on Thursday before Saturday, the day the accident occurred, told Wilson to take his personal car and go a short distance for some eggs and observed Wilson's manner in operating the car, and that Wilson was gone about 10 minutes. On the next day appellant requested Wilson to take the car and go get some sandwiches at a Barbecue Stand about 2 miles out the highway, and Wilson returned in about 30 minutes. Appellant further testified that he saw nothing wrong with Wilson's driving, who appeared to be a competent driver.

On Saturday Wilson asked appellant to lend him his car to go to a fraternity house in Austin to get a check, and gave the address. Appellant testified that he asked Wilson if he had a driver's license and that Wilson said that he did.

The car was loaned to Wilson at 9 o'clock Saturday morning and instead of returning as he had promised, Wilson found some friends and began to drink beer at various places, and started to Manor, Texas, in appellant's car to get some money which one of the friends had, and en route the collision occurred.

Special Issues Nos. 1, 2, 3, and 4 are directed to the rate of speed Wilson was

driving and proximate cause arising, and Issues Nos. 5 and 6 concerning the question of driving while intoxicated. Special Issues Nos. 7 and 8 are directed to the question of proper lookout, and these issues and the answers thereto are not under attack.

The Court defined "Negligence", "Ordinary Care", and "Proximate Cause" as follows:

" 'Negligence', as that term is used in this charge, means the doing of that which a person of ordinary prudence in the exercise of ordinary care would not have done under the same or similar circumstances, or the failure to do that which a person of ordinary prudence in the exercise of ordinary care would have done under the same or similar circumstances.

" 'Ordinary care', as that term is used in this charge, means that degree of care which a person of ordinary prudence would exercise under the same or similar circumstances.

" 'Proximate cause', as that term is used in this charge, means a cause without which the result complained of would not have occurred, and from which cause, such result, or some similar result, might reasonably be anticipated as a natural and probable consequence by a person of ordinary care and prudence, in the light of attending circumstances. There may be more than one proximate cause of an event."

Among issues submitted were:

"Special Issue No. 9:

"Do you find from a preponderance of the evidence that McCord McIntire was negligent, as that term is herein defined, by lending Jimmy Wilson his automobile without first ascertaining whether the said Jimmy Wilson had a driver's license?

"Answer this special issue 'Yes' or 'No.'

"Answer: Yes.

"In connection with the foregoing special issue, you are instructed that the word 'ascertain' means to find out or learn for a certainty.

"Special Issue No. 10:

"Do you find from a preponderance of the evidence that at the time he borrowed McCord McIntire's automobile, Jimmy Wilson was a reckless and incompetent driver?

"Answer this special issue 'Yes' or 'No.'

"Answer: Yes.

"If you have answered the foregoing special issue 'Yes', and only if you have so answered, you will answer the following special issue.

"Special Issue No. 11:

"Do you find from a preponderance of the evidence that at said time, McCord McIntire, by the exercise of ordinary care, should have known that Jimmy Wilson was a reckless and incompetent driver, if you have so found?

"Answer this special issue 'Yes' or 'No.'

"Answer: Yes.

"If you have answered the foregoing special issue 'Yes', and only if you have so answered, you will answer the following special issue.

"Special Issue No. 12:

"Do you find from a preponderance of the evidence that McCord McIntire was negligent, as that term is herein defined, by lending Jimmy Wilson his automobile when the said McCord McIntire, by the exercise of ordinary care, should have known that Jimmy Wilson was a reckless and incompetent driver, if you have so found?

"Answer this special issue 'Yes' or 'No.'

"Answer: Yes."

Special Issues Nos. 1 and 2 requested by appellant read:

"If you have answered Special Issue No. 9 'Yes' you will answer the following special issue; otherwise you need not answer it.

"Do you find from a preponderance of the evidence that such negligence, if any you have so found, was a proximate cause of the collision in question?

"Answer 'Yes' or 'No.' "

"If you have answered Special Issue No. 12 'Yes' you will answer the following special issue; otherwise you need not answer it.

"Do you find from a preponderance of the evidence that such negligence, if any you have so found, was a proximate cause of the collision in question?

"Answer 'Yes' or 'No'."

These requested issues were refused.

The other issues are in regard to medical, hospital, etc. bills, and to future nursing cost.

The jury fixed the total damages at $36,-293.45.

A final determination of the liability of appellant as a matter of law, the facts surrounding the lending of the car and the collision are not in dispute, except as inquiry as to Wilson having a driver's license, depends upon the construction of the cases on negligent entrustment.

A prime question is the liability of one who lends his car to another without using ordinary care to ascertain if such person is an incompetent, reckless or unlicensed driver, under the facts, is guilty of negligence.

Appellant takes the position that he is not guilty of negligence in lending his car to an

incompetent or reckless driver, or that he has no driver's license unless he, the owner of such car, actually knew of such incompetence or recklessness, and then only in case such negligence was found to be a proximate cause of the plaintiff's damage and cite in support of his position the case of Seinsheimer v. Burkhart, 132 Tex. 336, 122 S.W.2d 1063; Jones v. Gibson, Tex. Civ.App., 18 S.W.2d 744; Worsham-Buick Co. v. Isaacs, 126 Tex. 546, 87 S. W.2d 252, and other cases most of which are cited in the above cases.

Appellee relies on the cases of Mundy v. Pirie-Slaughter Motor Co., 146 Tex. 314, 206 S.W.2d 587, and Spratling v. Butler, 150 Tex. 369, 240 S.W.2d 1016.

Jimmy Wilson, called as a witness by plaintiff, testified that he was driving Mr. McIntire's Pontiac Station Wagon when he crashed into the rear of Mr. Van Sellers' truck on September 15, 1956; that he met Mr. McIntire on Wednesday before the collision; that he had been employed by Mr. Sam to work as a porter mostly, and did anything they asked him to do; that he was recommended by a colored boy named Walter Hilliard and who was working at a Barbecue Stand about a mile from Sam's Place; that he was not asked if he knew how to drive an automobile, or about his past history by Mr. Davidson or if he had a driver's license. That he asked Mr. McIntire if he could borrow his car to pick up a check at a fraternity house on Saturday; that he had seen Mr. McIntire during the days of Wednesday, Thursday and Friday before borrowing the car on Saturday; that Mr. McIntire did not inquire about his driving ability or of his record or past history or past employers; that he wanted the car for his own personal business. The witness then detailed his movements and activities up to and including the collision, and that he drank beer all morning and was driving over 70 miles per hour at the time of the collision. The witness further testified that he did not have a driver's license, and had been unable to get one, and had pled guilty to driving without a license three or four times, and also had pled guilty to driving while under the influence of liquor, and had been arrested for traffic violations, speeding, running stop signs and lights, and was guilty of all of such named violations.

Wilson testified that on Thursday Mr. McIntire told him to take his car and go a short piece for some eggs, and again on Friday Mr. McIntire sent him to a Barbecue Stand about 3 miles down the highway for some sandwiches and he was gone about thirty minutes.

Wilson further testified that he told McIntire that he wanted to go to town to get a check at a fraternity house on San Jacinto Street, but went to his mother's house and got the check. The witness testified that:

"Q. When Mr. McIntyre loaned you his car on the 15th of September, the day of this accident, I believe you have already said that he didn't ask you to show him your driver's license? A. No, sir.

"Q. But he did ask you if you had one? A. Yes, sir.

"Q. What did you tell him? A. I told him that I had."

On redirect examination the witness testified:

"Q. Now, the third time when you borrowed his car is when this catastrophe happened to Mr. Sellers, isn't it? A. Yes, sir.

"Q. Did he ask you at that time to show him your driver's license? A. No, he didn't ask me to show it.

"Q. Now, I want to ask you one question: Is it a fact, or is it not a fact, that Mr. McIntyre didn't ask you even whether you had a license this third time, just as he didn't on these first two. A. Yes, sir.

"Q. Now, what do you mean by 'Yes, sir'? A. He did ask me.

* * *

"Q. Let me ask you this, Jimmy: Will you state whether or not some people that represented Mr. McIntyre's interest in this lawsuit came to see you in the jailhouse the very day after this collision occurred? A. Someone did come up there and said they represented Mr. McIntyre.

"Q. They said they represented Mr. McIntyre? A. Yes.

"Q. Did you talk to them about how this thing happened? A. Yes, sir.

* * *

"Q. Isn't it a fact, or is it a fact, that these people that interviewed you, took your statement I believe, or talked to you about how this accident occurred over in the jailhouse were the same people who said they represented Mr. McIntyre's interest in this lawsuit, and didn't they tell you that you ought to say that he asked you about your license in order to help him in this lawsuit; isn't that a fact. Now, look at me; don't look at Mr. McIntyre.

"Mr. Gay: Your Honor, it is not necessary for him to badger this witness. We have no objection to his asking him in a gentlemanly way if somebody told him to lie about this matter.

"Q. Did they tell you that? A. Yes, sir."

On recross examination:

"Q. You have said now today that Mr. McIntyre asked you whether or not you had a driver's license? A. Yes, sir.

"Q. Is that the truth or not the truth? A. He did ask me.

"Q. He did ask you? A. Yes, sir.

"Q. Now, you are not lying about that, are you? A. No, sir; he asked me the last time."

Mr. McIntire testified that he was in business with Sam Davidson in "Sam, the Minnow Man" on the Fredericksburg Road, as a one stop fishing center, selling gas, oil, groceries, fishing tackle, etc. and had several employees, and among them Jimmy Wilson, whose duties were never outlined specifically, but generally as a porter and clean-up boy; that he made no inquiries with reference to Jimmy's background.

The witness testified that on Thursday he sent Wilson to get 6 or 8 dozen eggs from a Mr. Buaas about 400 yards down the road; that he did not ask Wilson if he had a driver's license, and made no inquiry about what kind of a driver he was, but watched Wilson drive down the road.

That the next time he let Wilson take his car was on Friday to go and get some sandwiches at Foy's Barbecue about 2 miles distance, and on this occasion made no inquiries as to a driver's license or anything else concerning Wilson's background.

Mr. McIntire further testified that on Saturday morning Jimmy Wilson asked for the car to pick up a check, and that he asked Wilson if he had a driver's license, who his former employer was and how long he would be gone, and Wilson replied that he had been employed by a fraternity house on North Guadalupe, and would be back in 45 minutes, and that he had a driver's license, but that he did not ask to see it.

Mr. McIntire further testified that he observed Wilson for the three days prior to the day of the collision and that Wilson was a good employee, did not drink and he believed Wilson had a driver's license, and would not have let Wilson have the car for a longer time than 45 minutes, and of his activities in calling the police when Wilson did not return as promised and of filing a complaint against Wilson in the afternoon.

We believe that it was incumbent on appellant to have ascertained that Wilson had a driver's license, and appellant by the exercise of ordinary care knew or should have known that Wilson was a reckless and

incompetent driver, and that appellant was negligent in lending his car to Wilson.

The question in negligent entrustment cases is:

> Whether, under the facts, the owner of the automobile was guilty of negligence, as that term is defined, in lending his automobile to an incompetent, reckless or unlicensed driver, without using ordinary care in ascertaining whether such person had a driver's license, or whether he was an incompetent and reckless driver.

We base our holding on and quote excerpts from the following cases: Spratling v. Butler, 150 Tex. 369, 240 S.W.2d 1016, and on the holding in Mundy v. Pirie-Slaughter Motor Co., 146 Tex. 314, 206 S. W.2d 587, 590.

> "The statute, as we construe it, prohibits the lending of an automobile only where the owner knows that the driver does not have a license. We do not think, therefore, that the mere proof, in the absence of actual knowledge, that the defendant's agents in the exercise of reasonable care should have known that Dickson did not have a license would show a violation of the statute. However, we think that the facts that the driver did not have a license and that the defendant's agents by the exercise of due care could have ascertained that he did not have a license may be alleged and proved by the plaintiff for the purpose of showing that the defendant's agents were in fact negligent in permitting Dickson to take and drive the automobile."

There was no error in overruling defendant's Motion for Instructed Verdict, since the jury found that defendant was guilty of negligence in lending his car to Wilson under the circumstances, and this was a proper fact issue to be resolved by the jury.

We have given careful consideration to the cases relied on by appellant and see no necessity to attempt to review them as we have concluded that the decisions in the Spratling case and in the Mundy case, supra, are the law now, and reflect the view of the Supreme Court.

In the Mundy case the court stated:

> "An examination of our statute requiring operators of automobiles to have licenses discloses that its principal purpose is to insure a minimum of competence and skill on the part of drivers for the protection of persons who might be injured or have their property damaged by negligent or reckless operation of motor vehicles on the highways. * * *
>
> "* * * the danger anticipated and intended to be prevented by the statute is that such persons, if given the opportunity to drive, will do so negligently and will cause damage to other persons."

The jury found that appellant failed to ascertain whether Wilson had a driver's license prior to lending Wilson his car; and that Wilson was a reckless and incompetent driver and that McCord McIntire by the use of ordinary care should have known that Wilson was a reckless and incompetent driver, and that McIntire was negligent by lending Wilson his automobile when McIntire by the use of ordinary care should have known that Wilson was a reckless and incompetent driver.

Since this case stems on the construction of "negligent entrustment" or lending of an automobile as have hereinabove been discussed, there is no absolute necessity to discuss all of appellant's points, other than to overrule the same.

Appellant's points Nos. 4 and 5 are directed to the refusal of the court to submit issues as to whether the alleged negligence in entrusting the car to a reckless and incompetent driver or in failing to ascertain whether Wilson had a driver's license was a proximate cause of the collision.

We do not believe that it was necessary to submit an issue of "proximate

cause" insofar as concerned the owner's negligence in entrusting the automobile to an unlicensed driver. In the Spratling case the Supreme Court quoted from the Mundy case as follows [150 Tex. 369, 240 S.W. 2d 1017]:

"If, after the automobile is entrusted to such driver, he operates it negligently, and thereby causes damages to a third person, the causal connection is shown between the negligence of the owner in lending him the automobile and the damage to the third person."

And while the Supreme Court did not expressly write on the question as to whether it was necessary to submit a subsidiary issue of "proximate cause" where the jury found the owner was negligent in lending his car to a driver when the owner, by the use of ordinary care, should have known that the driver was reckless and incompetent, but see no reason why the rule should not be the same as in negligent entrustment cases where the negligence of an unlicensed driver is involved.

Russell Construction Company v. Ponder, Tex.Com.App., 143 Tex. 412, 186 S.W.2d 233, adopted by the Supreme Court.

■ We do not believe that the admission of testimony showing that Jimmy Wilson was a reckless and incompetent driver and an irresponsible person was objectionable, since all of the testimony was to the effect that Wilson was an habitual traffic violator and had the reputation of being reckless. Wilson admitted to various violations of the law, such as driving while under the influence of liquor, driving without a driver's license and traffic violations.

The deputy clerk of the Corporation Court in Austin testified from the records in the Corporation Court, giving dates and docket numbers of charges against Wilson and admitted by him.

The admissions by Wilson and other testimony show that Wilson was a reckless and incompetent driver, and the intemperate habits and driving records were an issue in the case, and appellant knew, or by the exercise of ordinary care, should have known of such habits and driving records and the entrustment of his car to such a person formed the basis of McIntire's negligence, and such testimony was admissible.

McCarty v. Gappelberg, Tex.Civ.App., 273 S.W.2d 943, er. ref. N.R.E.

■ We overrule appellant's point complaining of the allowance of damage in the sum of $2125 as future nursing expense.

Dr. Robert H. Farris testified as to Mr. Sellers' injuries and that he would not be able ever to do manual labor, and that Mr. Sellers would not in all probability at any time in the future be able to take care of all of his personal needs without help.

Houston & T. C. R. Co. v. Gerald, 60 Tex.Civ.App. 151, 128 S.W. 166, er. ref.

The judgment of the trial court is affirmed.

HUGHES, Justice (concurring).

This case, requiring precise evaluation of Supreme Court decisions, is of the utmost importance to the automobile owning public.

The principal question is: Should the owner of a motor vehicle be liable for all damages caused by the negligent operation of such vehicle by a person using such vehicle with permission of the owner when the owner does not know and has no reason to believe that such person has no operator's license or that he is a careless and reckless driver?[1]

Subsidiary questions are:

Should the owner of a car be required to investigate whether the person to whom

1. Excluded from consideration are the relationship of agency between the owner and operator as well as when the auto- mobile is rented or to be operated by a commercial driver employee. Secs. 37, 38, Art. 6687b, Vernon's Ann.Civ.St.

permissive use of the car is to be given has an operator's license and whether or not he is a careful driver in order to avoid liability for the negligent operation of the car by such person and, in the matter of the license, if such investigation is required is an inquiry by the owner a sufficient investigation?

I accept as correct the following undisputed facts listed by appellee in his brief:

"1. Jimmy Wilson, a colored boy, was hired by appellant's partner either on Tuesday, September 11, 1956, or on Wednesday, September 12, 1956. Appellant was not present when Wilson was hired.

"2. Wilson was hired to work as a porter and handy man. He was not employed to drive motor vehicles.

"3. Appellant saw Wilson for the first time on Wednesday, September 12, 1956.

"4. On Thursday, September 13, 1956, appellant requested Wilson to drive his, appellant's Pontiac to the home of Mr. Buaas, located about 200 yards down the road and about 200 yards from the road.

"5. Appellant had never seen Wilson before Wednesday, September 12, 1956.

"6. Appellant did not ask his partner, Sam Davidson, anything about Wilson's background.

"7. Before he let Wilson drive to the Buaas' on Thursday, September 13, 1956, appellant did not

"(1) ask Wilson if he had a driver's license;

"(2) ask Wilson to show his driver's license;

"(3) ask Wilson about his driving experience; whether he had had any accidents or traffic violations.

"8. Before requesting Wilson to drive the Pontiac to Foy's Barbecue Stand on Friday, September 14, 1956, appellant did not

"(1) ask Wilson whether he had a license;

"(2) ask Wilson to exhibit his license;

"(3) make any inquiry as to the driving experience of Wilson.

"9. Appellant loaned his Pontiac to Wilson on Saturday, September 15, 1956, without first

"(1) requesting Wilson to show his driver's license, and

"(2) inquiring as to Wilson's driving experience, competency and background."

Appellee says there is some doubt as to whether appellant asked Wilson if he had an operator's license before lending him his car to drive on the occasion in question. I do not so consider it. Appellant and Wilson both testified in unequivocal manner that such inquiry was made. I refer to the *testimony of Wilson, who was appellee's witness, set out in the majority opinion.*

As shown by special issues Nos. 9 and 12, majority opinion, there are two distinct grounds upon which the judgment is or could have been based: (a) appellant's negligence in failing to ascertain that Wilson had no driver's license (b) appellant's negligence in lending Wilson his car when by the exercise of ordinary care he "should have known that Jimmy Wilson was a reckless and incompetent driver."

Considering the latter question first it is to be noted that appellant cites no case in which it is held that there is an affirmative duty on the part of a car owner to investigate the driving habits of a person who desires to borrow his car in the absence of circumstances reasonably calculated to provoke inquiry and investigation.

In this case there are no facts or circumstances which would cause a person with a reasonable mind or a person with a suspicious mind to become curious or suspicious about the driving habits of Jimmy Wilson.

I believe the law on this subject to be correctly stated in 5-A Am.Jur. 592, Sec. 581, as follows:

"In order to hold the owner of an automobile liable under the common-law rule charging him with liability for the negligence of an incompetent, reckless, or unfit driver to whom he entrusted his car, the plaintiff must establish by competent evidence that the owner had knowledge of the driver's incompetence, inexperience, or reckless tendency as an operator, or that, in the exercise of ordinary care, he should have known this from facts and circumstances with which he was acquainted. That knowledge may be established by the fact that he knew of specific instances of carelessness or recklessness or by the proof that the driver's incompetence was generally known in the community. The common-law rule charges the owner with liability because of his negligence in knowingly and wilfully permitting an incompetent driver to operate his car. Such liability on the part of the owner is generally confined to cases where he entrusts his motor vehicle to one whose appearance or conduct is such as to indicate his incompetency or inability to operate the vehicle with due care. To impose liability in other cases, where the incompetency of the entrustee is not apparent to the entruster of the motor vehicle at the time of its entrustment, it must be affirmatively shown that the entruster had at that time knowledge of such facts and circumstances relating to the incompetency of the entrustee to operate the motor vehicle as would charge the entruster with knowledge of such incompetency."

The following Texas authorities are to the same effect: Gordon v. Texas & Pacific Mercantile & Mfg. Co., Tex.Civ.App. Fort Worth, 190 S.W. 748, writ ref.; Clem Lumber Co. v. Fisher, Tex.Civ.App. Waco, 84 S.W.2d 282, writ dism.; Worsham-Buick Co. v. Isaacs, 126 Tex. 546, 87 S.W. 2d 252; Mayer v. Johnson, Tex.Civ.App. Amarillo, 148 S.W.2d 454, 457, writ dism. cor. judgm.

In the last case cited the Court said:

"Under the law as announced by the Supreme Court in the last case above cited (Seinsheimer v. Burkhart, 132 Tex. 336, 122 S.W.2d 1063) Montford T. Johnson, Sr., could not be held liable for the consequences of the accident which caused the damage in this case unless it was shown that his son was an incompetent, reckless or careless driver, and that the father knew of his incompetency in that respect."

The Seinsheimer case there referred to was by the then Commissioner and now Chief Justice Hickman. I quote therefrom [132 Tex. 336, 122 S.W.2d 1067]:

"In 5 Am.Jur., Automobiles, Section 355, this proposition of law is announced: 'An owner who lends his automobile to another, knowing that the latter is an incompetent, reckless, or careless driver, is liable for such person's negligence; the owner's liability in such cases is based upon his own negligence in intrusting the automobile to such a person. Intrusting the car to a minor child known to be a reckless and incompetent driver * * * constitutes an act of negligence for which the owner is liable.'

"That proposition is sound in principle and sustained by the authorities."

In my opinion there is no evidence to support the verdict of the jury that appellant by the exercise of ordinary care should have known that Jimmy Wilson was a reckless and incompetent driver.

Turning now to the second ground of liability as established by the jury i. e. negligence of appellant in lending his car to an unlicensed driver, I would have no difficulty in applying the same principles and reaching the same conclusion referred to and made in discussing the first ground of liability but for the opinions of the Supreme Court in the Mundy and Spratling cases cited by the majority.

I would reach such conclusion because there is no evidence of any kind or character which would have caused appellant to believe, know or suspect that Jimmy Wilson had no driver's license.

It is conceded that Sec. 36 of Art. 6687b, V.A.C.S., providing that no car owner shall "knowingly permit" his car to be operated by an unlicensed driver is inapplicable because appellant did not know this. But for the two decisions named above it would seem that the statute not applying resort to the common law rule of liability must be made.

The Spratling case will be discussed first. This case is primarily concerned with the question of proximate cause in cases of negligent entrustment.

It is materially different from the present case in that there the owner employed a person to drive his truck. The driver had no license and hence the employment was prohibited by statute. Sec. 37, Art. 6687b, V.A.C.S. This was negligence per se.

Furthermore in Spratling there were facts sufficient, in the opinion of the Court, to support a finding of negligence of the owner in not ascertaining that the driver had no license.

While the Court does not say so this duty to ascertain such fact must have arisen from application of the common law duty to inquire or investigate upon knowledge of facts sufficient for such purpose.

Explanation of the Mundy opinion is more difficult.

In this case there was pleading or evidence to the effect that a colored boy 18 years of age was permitted by his employer to use one of its cars during the noon hour for personal use. While so using it he ran into the back of a tractor being driven by Mundy.

The plaintiff there plead that the defendant "knew, or by the exercise of ordinary care and prudence could have and should have known, that said boy (driver of defendant's car) did not have a driver's license." I quote from the Supreme Court's opinion:

"The defendant filed a special exception to this allegation upon the ground that it was 'immaterial and irrelevant in that if taken as true, the having or not having the driver's license was not and could not have been a proximate cause of the accident of which the plaintiff complains * *.' This exception was sustained by the District Court. Evidence offered by Mundy to show that Dickson did not have a driver's license and that respondent *had knowledge or notice*[2] of this fact was excluded by the court upon defendant's objection."

The Court then stated:

"The controlling question presented by this appeal is whether the District Court correctly held that the plaintiff could neither plead nor offer evidence to show that Dickson, defendant's minor employee, had no driver's license, and that defendant permitted him to drive the automobile *with actual knowledge,* or under circumstances that would be reasonable notice, that he did not have such license. This is a question which has not been decided previously by this Court."

After noting with approval the decisions in Seinsheimer and Mayer, supra, to the effect that the owner who entrusts his car to a person known to him to be an incompe-

2. All italics added.

tent or reckless driver is guilty of negligence the Court proceeds:

> "With respect to the effect, if any, to be given to the fact that the owner of the automobile *knows* that the driver does not have a driver's license when he entrusts his car to such driver, the courts of other jurisdictions have reached a variety of conclusions."

The Court then discusses the authorities in other jurisdictions and concludes:

> "In part the differences in the holdings of the courts in other jurisdictions are to be explained upon the grounds of differences in the statutes requiring operators of motor vehicles to have licenses."

The Court analyzes our statutes and has this to say about them:

> "An examination of our statute requiring operators of automobiles to have licenses discloses that its principal purpose is to insure a minimum of competence and skill on the part of drivers for the protection of persons who might be injured or have their property damaged by negligent or reckless operation of motor vehicles on the highways."

After referring to Sec. 36, supra, and Sec. 44 of the same Act which makes violation of Sec. 36 a misdemeanor the Court continues:

> "Under this statute it is plain that defendant's agents were guilty of a violation of the law if they permitted Dickson to operate a motor vehicle belonging to defendant knowing that Dickson did not have an operator's license. While conceding this to be true, defendant urges that the criminal penalty is the only legal consequence of a violation of the law, that the alleged facts that Dickson did not have a license and that respondent's agents knew this are not evidence of negligence, * * *"

The Court answers this contention by holding:

> "In this state we have followed the rule that the violation of a criminal statute is not merely evidence of negligence, but is negligence per se."

The Court made this specific ruling:

> "We therefore hold that the District Court erred in sustaining the special exception to the plaintiff's pleading and in excluding the evidence offered by the plaintiff in this connection."

Thereafter the Court reversed and remanded the cause for a new trial. Before doing so, however, the Court made statements, which the trial court and the majority have relied upon in sustaining judgment for appellee. I quote the troublesome portion of the opinion [146 Tex. 314, 206 S.W.2d 590]:

> "However, we think that the facts that the driver did not have a license and that the defendant's agents by the exercise of due care could have ascertained that he did not have a license may be alleged and proved by the plaintiff for the purpose of showing that the defendant's agents were in fact negligent in permitting Dickson to take and drive the automobile.

> \*      \*      \*      \*      \*      \*

> "The facts which the plaintiff must establish under his allegations by the preponderance of the evidence to show liability in this connection are, therefore, (1) that defendant's agents permitted Dickson to drive one of its automobiles; (2) that at such time Dickson did not have a driver's license; (3) that the defendant's agents, actually knew that he did not have such license; or if they did not have such knowledge, (4) that defendant's agents were in fact negligent in permitting Dickson to drive the automobile without ascertaining whether he had a

driver's license;[3]   (5) that Dickson while in possession under such permission drove the automobile negligently; and (6) that such negligence on Dickson's part caused the collision and the injuries and damage to the plaintiff."

This language of the Court undoubtedly puts a duty upon the car owner to ascertain whether the person to whom the car is lent has a license. The Trial Court here has defined the word "ascertain" as meaning "to find out or learn for a certainty."

If the duty to find out to a certainty that the driver has or has not a license is discharged then a car owner would always have knowledge of the facts.

True it is that liability here is hedged with the definition of negligence. I do not know, however, in what way nor with what excuse a car owner could convince a jury that he acted as an ordinary prudent person in not "learning to a certainty" that the person to whom the car was lent had no license.

This is a fact which could always be learned to a certainty if proper investigation were made.

I am unable to determine the source of the duty imposed by the Court in Mundy upon the car owner to ascertain that the person to whom a car is lent has an operator's license. Certainly it is not to be found in the statutes. Certainly it has no parallel in the common-law in negligent entrustment cases involving defective cars or reckless drivers. Nor do I believe the duty to be founded in public policy. If it were then it would apply more forcefully to reckless driver cases than it would where the driver is merely unlicensed because all reckless drivers are a public menace while unlicensed drivers may or may not be.

It is with great reluctance that I follow the rule of Mundy.

Under the Trial Court's definition of "ascertain" about which no complaint is made I believe the jury was authorized, if not required, to find that merely asking Jimmy Wilson if he had a license was not a sufficient discharge of his duty to investigate.

There is one other very interesting question presented.

Appellant objected to the Court's definition of negligence in that it did not contain the element of foreseeability or anticipation of consequences. Nor was the element of foreseeability contained in any issues of proximate cause directly relating to appellant because no issues of proximate cause as to him were submitted.

"Foreseeability" is an essential element of negligence. Texas & P. Ry. Co. v. Bigham, 90 Tex. 223, 38 S.W. 162; Corpus Christi Speedway v. Morton, Tex. Civ.App. San Antonio, 279 S.W.2d 903. It is permissible to include the element of foreseeability in the definition of proximate cause. If included there it should not be repeated in the definition of negligence. Seinsheimer, supra.

The definition of proximate cause as it applied to Jimmy Wilson did contain the element of "foreseeability." Does this cure the omission?

I believe that the opinions in Spratling and Mundy wherein they hold a finding of proximate cause (presumably containing the element of foreseeability) as between the driver and the injured party establishes a causal connection between the owner and the injured party require that all elements of proximate cause including the element of foreseeability be imputed to the owner.

I concur in the judgment of affirmance.

---

3. This alternative requirement while not within the case as stated by the court is not dictum since the case was re-manded for trial. Chadwick v. Bristow, Tex.Civ.App., Austin, 204 S.W.2d 65, affirmed 146 Tex. 481, 208 S.W.2d 888.