J. E. FLOWERS, Next Friend of Donald Flowers, Appellant,

v.

Robert P. WILSON, III, Appellee.

No. 10624.

Court of Civil Appeals of Texas.

Austin.

Dec. 10, 1958.

ARCHER, Chief Justice.

This is an appeal from a take nothing judgment based on a jury verdict, growing out of a suit for personal injuries alleged to have been received by Donald Flowers, a minor then eleven years old, by having had his left foot injured·by the negligent operation by appellee of an automobile towing a trailer loaded with a boat and outboard motor.

The appeal is founded on nine points assigned as error and are to the effect that the verdict of the jury is unsupported by the evidence and the negative answer to special issue No. 1 is against the overwhelming weight of the evidence, and the negative answer to special issue No. 3 is against the overwhelming weight of the evidence, and so are the answers to issues Nos. 5 and 8, and the court erred in submitting issues Nos. 8, 10 and 11, and finally in overruling the motion for New Trial.

Points Nos. 1, 2, 3, 4, and 5, directed to the insufficiency of the evidence to support the verdict of the jury and that the answers of the jury are so against the overwhelming weight of the evidence that such answers ought not to stand.

Issue No. 3 inquired if the defendant failed to keep his automobile and trailer under proper control and the jury found that he did not.

The jury found in response to issue No. 5 that the defendant did not fail to keep his trailer within the confines of the roadway.

The jury found in response to issue No. 8 that Donald Wayne Flowers failed to keep such a lookout for vehicles approaching from his left as a person of ordinary prudence would have kept under the same or similar circumstances.

Fred A. Carver, Beaumont, for appellant.

Orgain, Bell & Tucker, Cleve Bachman, Beaumont, for appellee.

We do not believe that appellant's point No. 1 presents any more than a general condemnation of the order of the court in entering judgment.

Assignments Nos. 2, 3, 4 and 5 concern the question of whether there was sufficient evidence to go to the jury on the primary acts of negligence alleged to have been committed by the defendant, such as the failure to keep a lookout, failure to keep his car under control, and to keep his car and trailer within the confines of the roadway, all of such issues were answered favorable to defendant.

The jury found that the minor plaintiff was guilty of contributory negligence which was a proximate cause of the accident, by failing to keep a proper lookout for vehicles approaching from his left and in sitting on the curb with his feet in the street.

We shall consider the testimony in an effort to determine the sufficiency thereof to support the answers of the jury.

The defendant in part testified that he did not realize or know that the trailer cut across the corner or that there had been an accident until later that evening and further testified specifically as follows:

"Q. Of course, so. I would like to ask this question, Bob: Would you say that—in other words, when you turned the corner you say you did not see the little boy? A. Yes.

"Q. If he was standing there you could have seen him, but you did not see the little boy? A. Yes.

"Q. If he was standing there you could have seen him, but you did not see the child, is that correct? A. That is correct.

"Q. I believe this picture does show—I believe it shows a telephone pole somewhere around about in there, there is a telephone pole on the corner, is that right? A. Yes, sir. There is.

"Q. Is the telephone pole such that it might have obstructed the view of the child? A. Possibly, yes, sir.

"Q. By the same token, you still can't explain how the tire got over the curb? A. No, I can't.

"Q. You never had any sensation or felt it when it came over that curb? A. No, except that bumping sensation, I heard that in the middle of the block.

"Q. You don't associate anything with the corner, is that right? A. No, sir.

*　*　*　*　*　*

"Q. * * * did you see this boy walking along the street there? A. No, sir. I didn't.

"Q. Did you see any colored folk walking along the street at that point? A. Not to my knowledge, I don't remember seeing any.

"Q. This telephone post, I believe we have pretty well established that was the only thing on that corner could possibly have obstructed your view, is that true? A. Yes, sir.

"Q. Let me see that photograph, please, sir. (Reporter hands to counsel) Realizing the fact that this is somewhat enlarged photograph what would you estimate the size of that pole by the diameter of it? A. You mean across?

"Q. Yes, diameter, across? A. I don't know. Fourteen (14) or sixteen (16) inches, possibly.

"Q. It would not be wide enough to hide a boy, would it? A. I don't know unless he was standing right up behind it."

Mary Robinson, a witness called by plaintiff, testified:

"A. No, sir. I said that the little boy was not walking ahead of me, when I got off the bus he was sitting on the curb.

"Q. Whenever you got off the bus he was sitting on the curb, was that before the accident occurred. A. That was before the accident.

"Q. He was sitting on the curb, all right, with his little feet on the street, his little body on the curb? A. Yes, sir.

"Q. And then it was after that that this accident occurred, is that true? A. That is right.

"Q. And you saw that yourself? A. Yes, sir. I saw it. I was right there when the car hit his foot and went on."

Donald Wayne Flowers testified:

"Q. You have been sitting here throughout all this and I want you to just tell these folks to the best of your ability what happened out there that day, where you had been, what you were doing, and just what happened to you. A. Do you want me to tell—

"Q. Yes, sir. A. I had been swimming in the swimming pool from about four o'clock when I left my grandmother's house, I had come back from swimming with one of my cousins, and my grandmother asked me to go to the store which is just across the street down on Magnolia, and I was coming home with a loaf of bread, as I passed the liquor store I saw the boat with "PAM" on it, when I got down to the corner it ran into the corner and jumped over the curb and ran over my foot, and I sat down on the grass and started calling for by grandmother and then that colored lady ran over to the house and knocked on the door and got my grandmother to the door, that colored man picked me up and carried me across the street, my grandmother called my mother; she was at work.

"Q. And what did you do, son? I mean what took place after that?

A. Well, my grandmother after she called my mother she called the police, then when my mother got there, they tried to get—they called the doctor, and then all * * *.

"Q. Did they take you to the hospital? A. Yes, sir. Mrs.. Spain's husband took us to the Baptist Hospital.

* * * * * *

"Q. Now, Donald, tell these folks whether you were standing or sitting? A. I was standing when the boat hit me, when it hit me I tried to walk across the street, my foot hurt me so I sat down on the grass.

"Q. How far from the curb were you at the time when the trailer struck the curb? A. About a foot from where the street and sidewalk meets.

"Q. You mean—Where were you with respect to the sidewalks, there are two sidewalks meet there? A. Yes, sir.

"Q. Where were you with respect to where the two sidewalks meet? A. Well, I don't know, I was about a foot from the street though."

On cross examination the witness testified:

"Q. Had you gotten to that corner, and, I would like to ask you this Donald: Had you gotten to that corner and stopped there and sat down to rest a little bit or not? A. No, sir. The only time I sat down was after the boat hit me.

"Q. Did you see the car come around the corner, in front of ( · trailer? A. No, sir. I was looking down at the traffic.

"Q. You were what? A. I was looking the other way.

"Q. Well, you saw the car come in front of you before the trailer came

around in front of you, didn't you? A. Yes, sir.

"Q. Did you ever—Was the car—Did it appear to be close to the curbing? Did it—I mean, you say that the trailer came across your foot, that is what you are saying, son? A. Yes, sir.

"Q. All right. My question is: Wasn't the car, that is the car that was pulling the trailer, wasn't it awful close to the curbing when it came around? A. No, sir.

"Q. Well, did you notice how close it was? A. No, sir.

\* \* \* \* \* \*

"Q. Not that one, eh? Well, in any event, it is your testimony (think real hard) you had stepped down off the curbing or hadn't you? A. No, sir. I was on the sidewalk.

"Q. What is that? A. I was on the sidewalk."

■ The jury had before it the respective witnesses, saw them and it was, the province of the jury to make its determination and finding, and we believe that there was evidence of probative value from which the jury could make its answers to the issues.

■ We do not believe appellant's point No. 6 presents reversible error since the sole objection to the court's charge in submitting issue No. 8 was that the issue was not supported by the evidence, in view of Rule No. 274, Texas Rules of Civil Procedure. White v. Southwest Coaches, Inc., Tex.Civ.App., 292 S.W.2d 823.

■ Assignments Nos. 7 and 8 are directed to the submission of special issues Nos. 10, 11 and 12 inquiring respectively if Donald Wayne Flowers was sitting on the curb and conditionally if such was negligence and further if such was a proximate cause of the injuries.

In view of the jury's answers to these issues, and of our holding that there was evidence from which the jury could base such answers, these assignments do not present reversible error. Rule 274, T.R. C.P. and authorities supra.

■ The Motion for a New Trial was based on newly discovered evidence consisting of statements made to Mrs. Ruth Kilpatrick, the grandmother of Donald by Mary Robinson.

An extensive hearing was had on the motion and such was overruled.

We believe the court was justified in such action.

The newly discovered evidence is solely in the nature of an impeachment of appellant's own witness, Mary Robinson, and the witness, Mrs. Kilpatrick, grandmother of Donald, knew of the accident and was available at all times before and during the trial. Mrs. Kilpatrick testified that Mary Robinson talked to her right after the accident and showed her where Donald was sitting. Such testimony has no probative value and could be used only for impeachment of appellant's own witness.

The court was clothed with and exercised its discretion in overruling the motion and such action will not be reversed. 31 Tex.Jur. 90, New Trials Civil Cases, Sec. 81; Gowan v. Reimers, Tex.Civ.App., 220 S.W.2d 331, er. ref.

The judgment of the Trial Court is affirmed.

Affirmed.

HUGHES, J., not sitting.